LOJEK, APPELLANT, *v.* PEDLER ET AL., APPELLEES.

[Cite as Lojek *v.* Pedler (1986), 22 Ohio St. 3d 71.]

(No. 85-595—Decided February 5, 1986.)

*Crabbe, Brown, Jones, Potts & Schmidt, William J. Brown; Jeffrey L. Kocian* and *Richard Wetzel,* for appellant.

*Brouse & McDowell* and *J. Bruce Hunsicker,* for appellees.

CLIFFORD F. BROWN, J.   The proper resolution of this case depends upon the interpretation and interrelationship of two documents. The first document, labeled an "Agreement and Plan for Reorganization," provided for GLE/Richfield to issue certain stock but restricted the "disposal" of that stock until certain conditions were satisfied. The second document, labeled a "Trust Agreement," detailed an agreement whereby Stanley Lojek would lend $300,000 to James Pedler, who would then purchase certain shares of stock and transfer those shares to James Rondy as Lojek's agent pending Pedler's repayment of the debt to Lojek.

The trial court held that the alleged Trust Agreement was a contract to create a trust. The court of appeals disagreed, finding that no trust could have been contemplated by the parties because the legal and equitable ownerships of the shares were never to be severed.

The court of appeals held that, rather than creating a trust, "the parties intended to pledge the shares to secure Pedler's debt to Lojek." We agree. We also agree that "[s]ince the shares were never delivered, either to Lojek or to Rondy as Lojek's agent, the security interest was not perfected pursuant to R.C. 1309.23." However, the court of appeals erred in its conclusion that Lojek lost all rights granted by the Agreement because of his failure to perfect his security interest. Prior to the effective date of present R.C. 1308.36,[1] attachment of a security interest in securities was governed by R.C. 1309.14. Under that section, so long as the debtor had granted a valid security interest in securities to the creditor as collateral for a debt and that security interest had attached, the creditor's failure to perfect that security interest was irrelevant to the validity of the security interest as between the parties to a security agreement; perfection was relevant only to disputes among secured creditors as to the relative priorities of their security interests in the securities as collateral. Thus, at the time Lojek attempted to enforce the security interest at issue in this case, Lojek had obtained a valid security interest in certain securities as collateral. When an intended pledge of those securities failed for lack of delivery to Lojek or his agent prior to Pedler's death, that failure of delivery did not prevent Lojek from enforcing the terms of the security agreement against the Pedler estate.

R.C. 1309.01(A)(12) defines "security agreement" as "an agreement which creates or provides for a security interest." The Agreement in this case refers to Lojek's security interest as a "present assignment" of the stock "pursuant to a pledge of said stock" as collateral for Lojek's loan to Pedler. Thus, the Agreement in this case clearly meets that statutory definition. Further, the security interest attached to the collateral as provided by R.C. 1309.14: (1) the debtor signed a security agreement which contained a description of the collateral (the Agreement); (2) value was

---

[1] We note that, effective September 20, 1984, R.C. 1308.36 governs the enforceability and attachment of security interests in securities. By enacting R.C. 1308.36(A), the General Assembly has, in essence, mandated the very result found by the court of appeals below: "A security interest in a security is enforceable and can attach only if it is transferred to the secured party or a party designated by him pursuant to division (A) of section 1308.28 of the Revised Code." The current version of R.C. 1308.36 was adopted as part of Sub. S. B. No. 283's wholesale revision of R.C. Chapters 1308 and 1309, which was undertaken "* * * to adopt the Uniform Laws Commissioners' 1977 Amendments to Article 8 of the Uniform Commercial Code * * *." However, because present R.C. 1308.36 was not in effect at the time Lojek attempted to enforce his security interest in this case, the determination of whether Lojek's security interest attached and was enforceable must be made with reference to R.C. 1309.14.

given (Lojek's transfer of $300,000 to Pedler); and (3) Pedler, the debtor, had rights in the collateral.

The courts below have analyzed the security interest in this case as though the security interest could not attach pending Pedler's right to transfer legal title to the stock, which right was restricted by the Reorganization Plan. However, nothing in the Agreement requires that analysis. Despite the parties' acknowledgement that transfer of *ownership* of the shares was restricted, the Agreement nonetheless evidenced the parties' intention to make an "immediate pledge" of the stock. The Agreement did not require that title to the shares be transferred to Rondy, but merely that Rondy take possession of the shares. On the other hand, the Reorganization Plan restricted "disposal" of the shares, not the mere transfer of possession of the shares to effect a pledge as contemplated by the Agreement. The issuance of the shares in Pedler's name, thus resulting in Pedler having title to the stock, gave Pedler sufficient rights in the collateral to enable the security interest to attach for purposes of R.C. 1309.14(A). Thus, pursuant to R.C. 1309.14(B), since the Agreement did not explicitly postpone the time of attachment, Lojek's security interest in the stock attached and became effective between Lojek and Pedler at the moment the above three statutory requirements for attachment were met.

The parties agree that Lojek failed to perfect his security interest in the stock according to the terms of R.C. 1309.23. To so perfect his security interest, either Lojek or Rondy on Lojek's behalf would have had to take physical possession of the shares. By the terms of the Agreement, the parties intended that Pedler would deliver physical possession of the shares to Rondy who would act as Lojek's agent for purposes of perfection. However, "* * * a security agreement is effective according to its terms between the parties, * * *" R.C. 1309.12. Therefore, as between Lojek and Pedler (and, by extension, Pedler's estate), and under the law both at the time the Agreement was executed and at the time Lojek attempted to enforce the Agreement, the terms of the Agreement governed Lojek's rights in the collateral.

The Agreement contemplated the very situation which eventually occurred: "In the event of the death of * * * [Pedler] prior to the delivery of said shares to * * * [Rondy], then said stock certificates shall be immediately the property of * * * [Lojek], in full satisfaction of said note." Thus, for purposes of the Agreement, Pedler's death became a default-like event which triggered Lojek's legal right to take immediate possession of the collateral, both by the terms of the Agreement and by R.C. 1309.46. Finally, we note that Lojek's Agreement to accept the collateral in full satisfaction of the debt was consistent with his rights pursuant to R.C. 1309.48(B).

Accordingly, we hereby reverse the judgment of the court of appeals, and enter final judgment in favor of plaintiff Lojek.

*Judgment reversed.*

CELEBREZZE, C.J., SWEENEY, LOCHER, HOLMES, DOUGLAS and WRIGHT, JJ., concur.