In re MINES TIRE COMPANY, INC., Debtor.

Bankruptcy No. 95–10776 B.

United States Bankruptcy Court, W.D. New York.

March 28, 1996.

Penney, Maier, Wallach, & Crowe (Mark S. Wallach, of counsel), Buffalo, New York, for Trustee.

Goldman, Costa, Getman & Biryla (Jack L. Getman, of counsel), Buffalo, New York, for Broad Elm Tire Center, Inc.

CARL L. BUCKI, Bankruptcy Judge.

The computer revolution has transformed the work places and working methods of America. Law and the legal profession are hardly immune from these changes. For example, keepers of public records have computerized their data bases, all for the sake of efficiency and precision. Is it possible, however, to become so efficient and precise that one forsakes the recognition which law often accords to substantial compliance? The present case involves a financing statement which contains an error in its recitation of the borrower's name. At issue is whether computer technology can effect a change of standards, so as to render defective a lien that a reasonably diligent searcher would have discovered through use of manual techniques.

In June 1993, Broad Elm Auto Center, Inc., sold the assets of its auto and tire service business to Mines Tire Company, Inc. As part of the consideration for this sale, Mines Tire Company, Inc., executed three promissory notes. These were to have been secured by a lien covering all of the obligor's "appurtenances, appliances, fixtures, equipment, accounts receivable, chattel paper, and the proceeds therefrom." Unfortunately, both the chattel mortgage and the financing statement were executed in the name of "Mines Company, Inc.", a title lacking the word "Tire." Eventually, Mines Tire Company, Inc., defaulted on its obligations to Broad Elm Auto Center, Inc. On March 10, 1995, Mines Tire filed a petition for relief under Chapter 11 of the Bankruptcy Code. This matter was then converted to Chapter 7 on June 29, 1995.

■ Until the appointment of a Chapter 7 trustee, all parties had assumed the validity of Broad Elm's security interest. Indeed, in a cash collateral agreement, the debtor-in-possession recited that Broad Elm had duly perfected its lien.[1] When Broad Elm again moved after conversion for permission to enforce its security interest, the trustee objected. Shortly thereafter, the parties reached an interim settlement, whereby Broad Elm recovered the collateral upon paying $25,000 into escrow. The trustee now holds this sum, with its ultimate disbursement to abide this Court's decision regarding the validity of Broad Elm's security interest.

■ New York's version of the Uniform Commercial Code establishes a procedure for perfection of a security interest in most forms of personal property. In the present circumstance, to establish its secured position, Broad Elm was required to file a financing statement both with the Secretary of State and with the Clerk for the County of Erie. Subdivision 1 of UCC 9–402 provides that the financing statement must include "the names of the debtor and the secured party." However, subdivision 8 of this section states that "[a] financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading." Thus presented is the question now before the court: whether deletion of the word "Tire" from the obligor's name is seriously misleading.

Prior to the hearing on this matter, the parties undertook to search the public record for financing statements in the debtor's name. The Trustee reported that a computer search for the specific name of "Mines Tire Company, Inc." failed to discover any lien filed on either the state or county levels against assets of the debtor. Counsel for Broad Elm obtained a contrary response to his investigation of county records. Asked to perform a manual review, the searcher was able to locate the applicable lien. Not satisfied with either approach, the Court has made its own inquiry through the Westlaw

---

1. Counsel for Broad Elm also contends that this Court's approval of the cash collateral stipulation should bind the trustee to the debtor's acknowledgement of lien perfection. Set forth only in the prefatory text, this acknowledgement was not part of the stipulation's operative provisions.

Rather, the stipulation granted a lien in postpetition assets "to the same extent of Broad Elm's security as it existed immediately prepetition." The effect of the stipulation was to continue the creditor's lien status, not to create a lien in the event that none existed previously.

computer service.[2] Searching state records for any obligor whose name might include the word "Mines", this investigation yielded 109 responses. Twenty-one entries were for obligors whose name began with this word. Of these, two were the financing statements filed on behalf of Broad Elm.

■ Courts have generally treated a mistake involving a descriptive word other than at the beginning of a corporation's name as a minor error that is not seriously misleading. In *In re Excel Stores, Inc.*, 341 F.2d 961 (2nd Cir.1965), the Second Circuit found a financing statement to be valid against Excel Stores, Inc., even though filed in the name of "Excel Department Stores, Inc." Similarly, in *In re Nara Non Food Distributing Inc.*, 66 Misc.2d 779, 322 N.Y.S.2d 194 (Sup.Ct. Queens County 1970), *aff'd* 36 A.D.2d 796, 320 N.Y.S.2d 1014 (2nd Dept.1971), the Court recognized perfection of a lien despite deletion of the word "Non" from the name of the titled party. The standard in New York is that annunciated in *TMMB Funding Corp. v. Associated Food Stores*, 136 A.D.2d 540, 523 N.Y.S.2d 161 (2nd Dept.1988), where the Appellate Division allowed priority against assets of The Kohn's Supermarket, Inc., to a lien filed in the name of "Kohn's Supermarket d/b/a Best K Foods, Inc."

When determining whether an inaccuracy in the naming of the debtor in the financing statement was a "minor error" which was "not seriously misleading" a court must ask whether a reasonably diligent searcher would be likely to discover a financing statement indexed under the correct name. . . . In this regard the inquiry must question the extent of the discrepancy between the debtor's true name and that indicated on the financing statement so as to determine whether the filing gave the minimum information necessary to put any searcher on inquiry. 136 A.D.2d at 542–43, 523 N.Y.S.2d 161.

The Trustee contends that a searcher's mission is to investigate filings against an actual name, not some hypothetical variation thereof. Although manual searchers may inevitably stumble upon similar names, computers look for identity of input. Asserting that computer searches are now the norm, the Trustee believes that a reasonable searcher may rely upon the output of a computer inquiry that is directed to the obligor's correct corporate name. In as much as computer searches demand precision, the Trustee would hold that almost any deviation from the actual name is misleading.

Computers are machines. Like all machines, they are created to enhance productivity and efficiency. If computers frustrate rather than fulfill this essential purpose, humans inevitably must either discard them or limit their function. Even in this age of burgeoning computer use, no person should ever become a servant to a machine. Rather, machines are made to promote the endeavors of humankind, among which is the administration of its laws.

By enacting subdivision 8 of UCC 9–402, the State of New York acknowledged the seemingly contradictory coexistence of human frailty and ingenuity. To the extent that human ingenuity would normally overcome the effects of any human error in the filing of a financing statement, that financing statement is to be deemed effective. If the present controversy had arisen prior to the availability of computer assisted searches, this Court would not hesitate to accord validity to Broad Elm's lien. The facts are essentially identical to those considered in the above noted precedents of the Second Circuit and the State of New York. As in those instances, the indexed name should have sufficed to enable a manual searcher to locate the security interest. Indeed, a manual search did discover the financing statement of Broad Elm.

■ The legislature of New York State has not changed the text of UCC 9–402(8) since its enactment in 1962. Although courts must regularly apply established rules to new facts and circumstances, the underlying principles of law must remain unchanged. Subdivision 8 establishes a standard of dili-

---

**2.** Rule 201 of the Federal Rules of Evidence permits this Court to take judicial notice, "whether requested or not" of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

gence that will survive any change of technology. This Court wishes neither to encourage nor to dissuade the use of computers. If they are to be used, however, that use may not excuse or compromise the level of care which a creditor must exercise in conducting its search of lien filings. To the extent that a human searcher would inevitably examine all corporate names having certain basic components, a computer searcher should act similarly. It will not suffice to perform a word search for the precise corporate name. Rather, the interested party should expand its investigation to include all related entries through which a manual searcher might have stumbled. In the present instance, a reasonable computer search would have included at least all entries beginning with the word "Mines." As the Court itself confirmed, such a computer search would have discovered the lien of Broad Elm. Accordingly, deletion of the word "Tire" is not such an error as would be seriously misleading.

A marvelous invention with vast potential, the computer nonetheless possesses significant limitations. Its utility is not unlimited. The computer can never replace human judgment and discretion. For these reasons, computer users must learn to recognize its shortcomings and thereby act to circumvent any resulting problems.[3] Only in this way can a searcher achieve the benefits of computer precision without jeopardizing the accuracy of a diligent human searcher.

For the reasons stated herein, Broad Elm Auto Center, Inc., shall be deemed to hold a valid security interest in the funds which the Trustee now holds in escrow. The Trustee shall be authorized to disburse these funds in accord with this decision.

So ordered.

---

**3.** For this same reason, a writer would never rely exclusively upon a program designed to check spelling. Such features may confirm that each word matches a correctly spelled word, but that correctly spelled word is not necessarily the word which the author intends.