ADVANCED ANALYTICS LABORATORIES, INC., Appellant,

v.

KEGLER, BROWN, HILL & RITTER, L.P.A., et al., Appellees.

[Cite as *Advanced Analytics Laboratories v. Kegler, Brown, Hill & Ritter*, 148 Ohio App.3d 440, 2002-Ohio-3328.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 01AP–1164.

Decided June 27, 2002.

Matan, Geer & Wright, Eugene L. Matan and Ethan J. Spring, for appellant.

Zeiger & Carpenter, John W. Zeiger, Marion H. Little, Jr., and Eva C. Gildee, for appellees.

PEGGY BRYANT, Judge.

{¶ 1} Plaintiff-appellant, Advanced Analytics Laboratories, Inc., appeals from the August 11, 2001 judgment of the Franklin County Court of Common Pleas granting the Civ.R. 56(C) summary judgment motion of defendants-appellees, Kegler, Brown, Hill & Ritter, L.P.A., Robin Smith Hoke, and Beatrice E. Wolper (collectively "defendants"), and dismissing plaintiff's legal malpractice complaint against defendants.

{¶ 2} Plaintiff's case involves construction and application of Article 9 of the Uniform Commercial Code ("UCC"), which relates to secured transactions. Because the actions in this case were commenced before July 1, 2001, we apply the version of the UCC Article 9 in effect until Article 9 was revised effective

July 1, 2001.   See R.C. 1309.702(C) and N.C.Gen.Stat. 25–9–402, effective July 1, 2001.

{¶ 3}   In July 1996, plaintiff, an Ohio corporation, retained the law firm of Kegler, Brown, Hill & Ritter, L.P.A., and individual attorneys Robin Smith Hoke and Beatrice E. Wolper of the firm, to represent it in business and secured transactions with debtors and creditors of plaintiff.   Plaintiff's claim of legal malpractice arises out of defendants' preparation and filing of documents to evidence plaintiff's security interest in assets of Environmental Aspecs, Inc. of North Carolina ("EAI of NC"), a North Carolina corporation for whom plaintiff provided environmental testing services from 1994 to 1996.   EAI of NC is a wholly owned, independent subsidiary of Environmental Aspecs, Inc. ("EAI"), its parent corporation.   Environmental Aspecs, Inc. of Georgia ("EAI of Georgia") is another independent subsidiary of EAI.

{¶ 4}   On September 23, 1996, EAI of NC executed a term promissory note, a subordinated loan agreement, and a security agreement in the amount of $299,694 in favor of plaintiff, as creditor and secured party, to evidence EAI of NC's indebtedness to plaintiff.   Defendants prepared the documents.

{¶ 5}   A subordination agreement is " 'an agreement by which a party having a superior right of some sort agrees with someone having an inferior right that, as between the two of them, the inferior right shall be treated as if it were superior.' "   *In re Environmental Aspecs, Inc.* (E.D.N.C.1999), 235 B.R. 378, 395, 38 UCC Rep.Serv.2d 1036, quoting *In re Lantana Motel* (Bankr.Ct.S.D.Ohio 1990), 124 B.R. 252, 255.   The subordinated loan agreement here, to be executed by plaintiff and EAI of NC, was intended to recognize that plaintiff's secured claim in the collateral of EAI of NC was *inferior* to a *purportedly superior* secured claim of another creditor, SouthTrust Bank. Id. at 399.   Plaintiff's secured claim is a "security interest," an interest in personal property or fixtures of the debtor that secures payment or performance of an obligation.   R.C. 1301.01(KK)(1).   See, also, *In re Environmental Aspecs, Inc.* at 384.

{¶ 6}   To make plaintiff's security interest effective against third parties who might have an interest in EAI of NC's collateral, defendants "perfected" plaintiff's interests by preparing and filing UCC financing statements for plaintiff in the North Carolina Secretary of State's Office on December 27, 1996, and the Wake County, North Carolina Register of Deeds on December 31, 1996, pursuant to Article 9, Sections 401 and 402 of the UCC, enacted in North Carolina in N.C.Gen.Stat. 25–9–402.   The first creditor to file a sufficient financing statement, and thus "perfect" its interest, has priority over other creditors in the assets of the debtor.   *In re Environmental Aspecs, Inc.*, 235 B.R. at 384–385.

{¶ 7}   In the first box on the financing statements' coversheet, defendants listed the debtor as "Environmental Aspecs, Inc."; it is undisputed defendants

inadvertently omitted "of North Carolina" from the debtor's name on the coversheet. However, the description box for the collateral to be covered, located immediately under the debtor's name on the coversheet, contained the words "[s]ee Exhibit A attached for description and debtor's signature," and the debtor's signature line below contained the words "[s]ee Exhibit A attached." The security agreement was attached as Exhibit A to the financing statements, and both documents were filed with the North Carolina Secretary of State's Office and Wake County. The security agreement expressly indicated in the introductory paragraph in Section 4.05 regarding "Notices," and on the signature page, that the debtor was EAI of NC. The security agreement was signed by Dennis L. Mast as president of EAI of NC, and the agreement described the collateral at issue.

{¶ 8} Defendants' representation of plaintiff apparently ended sometime after the UCC financing statements were filed in North Carolina.

{¶ 9} In April 1998, EAI and its subsidiaries, EAI of NC and EAI of Georgia, filed voluntary Chapter 11 bankruptcy petitions in the Bankruptcy Court for the Eastern District of North Carolina, and the three cases were administratively consolidated. In its bankruptcy filings, EAI of NC declared plaintiff an unsecured creditor and SouthTrust Bank (the "bank") a secured creditor.

{¶ 10} According to the federal courts in this case, the bank had extended a line of credit to EAI, *the parent corporation*, in June 1994. See *In re Environmental Aspecs, Inc.*, 235 B.R. at 382. To evidence the loan, EAI executed a note and a security agreement in favor of the bank, and the bank perfected its security interest by filing UCC financing statements with the North Carolina Secretary of State's Office and Wake County Register of Deeds, listing EAI as the debtor. Id. The bank continued to lend money to EAI in 1995 and 1996. Id. Although the bank apparently knew of the separate corporate status of EAI of NC when it began its lending relationship with EAI in 1994, the bank neither required EAI of NC to execute a security agreement nor filed financing statements to perfect its interest in assets owned by EAI of NC until after EAI defaulted on its bank loans. Id. at 382–383, 391. After the default, the bank required EAI and its subsidiaries, including EAI of NC, to execute a forbearance agreement recognizing the bank's security interests in the subsidiary corporations' assets. Id. at 383. In November 1997, the bank filed financing statements in North Carolina listing EAI of NC as a debtor. Id.

{¶ 11} On July 9, 1998, through new legal counsel that represented plaintiff throughout the remainder of the proceedings, plaintiff filed a "proof of claim" form with the bankruptcy court that indicated plaintiff had a "secured claim" in EAI of NC's assets in the amount of $338,311.73, including $299,694 in principal, plus interest and attorney fees. Attached to plaintiff's proof of claim form were

various documents, including the agreements executed by EAI of NC in favor of plaintiff and the UCC financing statements plaintiff filed in North Carolina. The bank filed a proof of claim form for $1.4 million, approximately $379,000 of which it declared was secured by assets of EAI of NC.

{¶ 12} On July 14, 1998, plaintiff filed a complaint in the bankruptcy court for declaratory judgment against EAI of NC and the bank to determine the priority of the security interests plaintiff and the bank held. Both plaintiff and the bank moved for summary judgment before the bankruptcy court. While the motions were pending, EAI of NC filed a reorganization plan indicating that the bank had first lien position over its assets. Id. at 382. As a result, one of the main issues before the bankruptcy court was whether plaintiff's financing statements, whose coversheet listed the name of the debtor as "Environmental Aspecs, Inc.," rather than "Environmental Aspecs, Inc. of North Carolina," adequately described the debtor to perfect plaintiff's security interest under the UCC as adopted in North Carolina.

{¶ 13} Plaintiff urged the bankruptcy court's reliance on the federal district court's decision in *In re Southern Supply Co. of Greenville, N.C.* (E.D.N.C.1975), 405 F.Supp. 20, 21, where the federal district stated that "[o]ne of the policies of this Article [9 is] to simplify formal requisites and filing requirements and [it] is designed to discourage the fanatical and impossibly refined reading of such statutory requirements in which courts have occasionally indulged themselves." Id., citing UCC Section 9–402, Official Comment 5 (1962). (Plaintiff's motion for summary judgment in bankruptcy court, 5.)

{¶ 14} In accordance with *Southern Supply,* plaintiff in its complaint and in its motion for summary judgment before the bankruptcy court vigorously contended that the financing statements comported with the statutory requirements and constituted the "first and best lien" on EAI of NC's assets. Plaintiff asserted that the statutory and case law established that:

{¶ 15} "[I]nadvertent omission [in plaintiff's financing statements] is not seriously misleading and does not render the Financing Statements invalid because: a) the mere omission of the words 'of North Carolina' when the addresses of EAI and EAI of NC are the same and the two are related companies does not result in a misleading error; and b) the coversheets specifically refer the reader to the attached Security Agreement for the signature of the debtor and for the description of the collateral, which identifies EAI of NC as the debtor and put[s] third parties on inquiry notice to read the attached Security Agreement." Plaintiff's motion for summary judgment in the bankruptcy court, 4–5.

{¶ 16} Plaintiff further contended that "[i]n this case, any third party inquiring as to liens against the EAI entity intended would be 'fairly put on notice that

there might be an outstanding lien' against EAI of NC as a result of the Financing Statements listing EAI as the debtor and referring to the attached Security Agreement for the signature of the debtor and the description of the collateral, clearly setting forth EAI of NC as the debtor." (Plaintiff's motion for summary judgment in bankruptcy court, at 7.) Plaintiff asserted that case law supported judgment in favor of plaintiff "because the minor error on AAL's Financing Statements' coversheets is at the end of the debtor's name and a diligent examiner would have to look at all related entries such as the EAI entries and could not merely rely on a search of the exact corporate name." (Id. at 8.)

{¶ 17} In *Southern Supply,* cited by plaintiff in support of its contention, the court held not to be seriously misleading the identification of the debtor on the financing statement as "Southern Supply Co.," as opposed to the correct name of "Southern Supply Company of Greenville, N.C., Inc."; see, also, *In re Nara Non Food Distributing, Inc.* (1970), 66 Misc.2d 779, 322 N.Y.S.2d 194, affirmed (1971), 36 A.D.2d 796, 320 N.Y.S.2d 1014 (holding a financing statement filed as "Nara Dist. Inc." sufficient to perfect creditor's interest even though the correct name of the debtor was "Nara Non Food Distributing, Inc."); *In re Mines Tire Co., Inc.* (Bankr.Ct.W.D.N.Y.1996), 194 B.R. 23, 29 UCC Rep.Serv.2d 617 (holding a financing statement which incorrectly listed "Mines Company Inc." as opposed to "Mines Tire Company, Inc." to be sufficient); and *In re Platt* (E.D.Pa.1966), 257 F.Supp. 478, 3 UCC Rep.Serv. 719 (holding to be sufficient the incorrect identification of debtor as "Platt Fur Co." instead of the correct name of "Henry Platt").

{¶ 18} Plaintiff prevailed and the bankruptcy court held that plaintiff was entitled to summary judgment in its favor under applicable law. See *In re Environmental Aspecs, Inc.* (Bankr.Ct.E.D.N.C.1998), No. 98–00752–5–ATS, Adversary Proceeding No. S–98–00053–5–AP. The bankruptcy court noted that to determine whether plaintiff properly perfected its security interest in the assets of EAI of NC, one must look to North Carolina law. N.C.Gen.Stat. 25–9–103(b). Id., Opinion at 4. In accord, R.C. 1309.03(A)(2). Applying North Carolina law, the bankruptcy court determined that "[e]ven if the financing statement contains minor errors, it is sufficient to perfect a security interest as long as the statement substantially complies with the statutory requirements and the errors are not seriously misleading." Id. at 4–5, relying on N.C.Gen.Stat. 25–9–402(8), adopting UCC Article 9, Section 402. In accord, R.C. 1309.39(H).

{¶ 19} The bankruptcy court concluded that, while plaintiff's financing statements contained minor errors, its failure to list the debtor as EAI of NC on the first page of the financing statements was not a seriously misleading error and "[d]iligent creditors searching the indexes for liens on the assets of Environmen-

tal Aspecs, Inc. of North Carolina *would certainly be on notice* of and would examine the financing statements listed under the name Environmental Aspects, Inc. [sic]." (Emphasis added.) *In re Environmental Aspecs, Inc.*, Bankr.Ct. Opinion, at 5–6. The court further concluded that the subordinated loan agreement allegedly entered into by plaintiff and EAI of NC did not subordinate plaintiff's claim because, among other reasons (1) plaintiff did not sign it, and (2) the bank did not have a perfected security interest in the assets of EAI of NC at the time the agreement was allegedly made. Id. at 9. Rather, because plaintiff had a secured claim in the assets of EAI of NC that was properly perfected before the bank obtained and perfected its security interest in November 1997 in the assets, plaintiff's claim was entitled to priority over the bank up to the amount of $338,311.73. Id. at 9.

{¶ 20} Parenthetically, we note that, although plaintiff had requested an award of attorney fees when bringing the declaratory action, the bankruptcy court did not address the issue of attorney fees in its opinion or judgment. The limited record provided to this court of the federal proceedings in North Carolina does not reveal whether the bankruptcy court otherwise considered an award of attorney fees to plaintiff.

{¶ 21} The bank and EAI of NC appealed the bankruptcy court's decision to the federal district court. In its responsive brief filed in the federal district court, plaintiff again vigorously argued that the inadvertent failure to include "of North Carolina" in the debtor's name on the coversheet of its financing statements was a minor error that was not misleading and did not affect the validity or priority of plaintiff's secured claim.

{¶ 22} Plaintiff again prevailed, and the federal district court issued a decision on May 5, 1999, affirming the bankruptcy court's judgment. See *In re Environmental Aspecs, Inc.*, 235 B.R. at 401. With respect to plaintiff's financing statements, the federal district court concluded:

{¶ 23} "AAL's December 1996 filing contained every element required to establish a lien against EAI of NC. Although the financing statement identified the debtor as EAI in two places, the attached Security Agreement, clearly referenced on the financing statement itself as an 'attachment,' identified EAI of NC as the debtor, contained the signature of Dennis Mast as President of EAI of NC, and accurately described the collateral at issue. It is also worthy of note that a copy of the Security Agreement, in and of itself, is sufficient as a financing statement if it contains the requisite information and is signed by the debtor. See N.C.Gen.Stat. § 25–9–402(1). * * * *There is no question that the financing statement and Security Agreement filed by AAL would put any potential creditors of EAI of NC on notice of AAL's lien against EAI of NC's assets.* * * *

{¶ 24} "* * *

{¶ 25} "* * * AAL's financing statement was indexed in a manner sufficient to put later creditors of EAI of NC on notice." (Emphasis added.) Id. at 386, 387.

{¶ 26} Regarding the subordinated loan agreement, the federal district court found the agreement ineffective because plaintiff and EAI of NC entered into the agreement in 1996 with the mutually mistaken belief that the bank at that time had a lien that was superior to plaintiff's when, in fact, the bank did not then have a superior interest in the assets of EAI of NC. Id. at 399–401. The federal district court affirmed the bankruptcy court's judgment that plaintiff's lien was properly perfected and entitled to priority over the interest of the bank. Id. at 401. Again, the record before this court does not reflect whether the federal district court considered an award of attorney fees to plaintiff as the prevailing party.

{¶ 27} On August 30, 1999, plaintiff filed a complaint for legal malpractice against defendants in Franklin County Court of Common Pleas, alleging that defendants breached the duty of care owed to plaintiff when they (1) omitted the words "of North Carolina" in the debtor's name on the coversheet of the financing statements filed in North Carolina, and (2) researched and prepared the subordinated loan agreement which was intended to subordinate plaintiff's secured claim to a purportedly superior secured claim of the bank that later was discovered to be nonexistent. Plaintiff alleged that as a direct and proximate result of defendants' negligent representation, plaintiff "was forced to hire additional counsel" to file the adversarial proceedings in North Carolina and was accordingly entitled to recover as damages attorney fees and expenses in excess of $70,000 that plaintiff allegedly unnecessarily incurred in defending the financing statement in the federal courts.

{¶ 28} On July 31, 2002, pursuant to defendants' Civ.R. 56 motion, the trial court held, as a matter of law, that defendants were entitled to summary judgment because plaintiff failed to prove the necessary elements for its legal malpractice claim. The court first found that plaintiff is judicially estopped from asserting in this lawsuit that defendants breached their duty of care by preparing the financing statement but omitting the words "of North Carolina" from the debtor's name, when in prior litigation plaintiff successfully asserted the validity and sufficiency of the financing statements in perfecting plaintiff's security interest. The trial court further found plaintiff's "claim for breach of the duty of care, whereby the duty was to ensure that the financing statement comported with UCC requirements and Ohio law, is unsupported in the record given that the financing statement *in fact* validly perfected Plaintiff AAL's interest in EAI of North Carolina's assets." (Emphasis sic.) (Decision at 7–8.) Finally, the court

found that plaintiff failed to set forth specific facts to support its claim of damages allegedly incurred as a proximate result of any deficiency in defendants' research and preparation of the subordinated loan agreement.

{¶ 29} Plaintiff now appeals, assigning the following errors:

{¶ 30} "I. The trial court erred and abused its discretion by granting defendant–appellees' motion for summary judgment.

{¶ 31} "II. The trial court erred and abused its discretion by denying discovery to plaintiff–appellant, to wit, preventing plaintiff–appellant from deposing defendant–appellees prior to deciding defendant–appellees' motion for summary judgment."

{¶ 32} In its first assignment of error, plaintiff asserts the trial court erred in finding that plaintiff is judicially estopped from claiming legal malpractice. Plaintiff contends that it has never argued that the financing statements are error-free, and maintains that plaintiff is not inconsistent in claiming that the financing statements are not "seriously misleading" and are sufficient to perfect its interest under the standard for UCC filings, but are nonetheless negligently drafted under the "ordinary care" standard for legal malpractice. Plaintiff asserts that defendants' "minor error" in omitting "of North Carolina" from the debtor's name on the financing statements, together with the subordinated loan agreement which inaccurately reflected the nature of plaintiff's interest, caused confusion as to the status of plaintiff's lien, resulting in damage to plaintiff. Plaintiff contends that, but for defendants' negligent research and drafting of the documents, plaintiff would not have incurred "unnecessary" litigation costs in defending its secured claim status.

{¶ 33} Summary judgment is appropriately granted only where the moving party demonstrates that (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343. The moving party "bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. Once the moving party meets its initial burden, the nonmoving party has a reciprocal burden to set forth specific facts showing there is a genuine issue for trial and, if the nonmoving party does not meet its reciprocal burden, summary judgment shall be entered against the nonmoving party. Id. Appellate review of summary judgments is de novo. *Motorists Mut. Ins. Co. v. Natl. Dairy Herd Improvement Assn., Inc.*

(2001), 141 Ohio App.3d 269, 275, 750 N.E.2d 1169. Accordingly, we stand in the shoes of the trial court and conduct an independent review of the record.

{¶ 34} To establish a cause of action for legal malpractice based on negligent representation, a plaintiff must show that (1) the attorney owed a duty or obligation to the plaintiff, (2) there was a breach of that duty or obligation and the attorney failed to conform to the standard required by law, and (3) there is a causal connection between the conduct complained of and the resulting damage or loss. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 674 N.E.2d 1164, syllabus, following *Krahn v. Kinney* (1989), 43 Ohio St.3d 103, 538 N.E.2d 1058. An attorney's duty to his or her client exists in relation to the scope of representation sought by the client and undertaken by the attorney. *Practical Offset, Inc. v. Davis* (1980), 83 Ill.App.3d 566, 39 Ill.Dec. 132, 404 N.E.2d 516, 520. A plaintiff's failure to create a genuine issue of material fact as to any of these elements entitles a defendant to summary judgment on a legal malpractice claim. *Green v. Williams* (1999), Franklin App. No. 99AP–474, 2000 WL 192576. A review of the record shows that plaintiff failed to demonstrate the above elements, and, accordingly, summary judgment was appropriate.

{¶ 35} In plaintiff's complaint, plaintiff alleged that an attorney-client relationship was established in July 1996, and defendants "represented [plaintiff] in business and secured transactions with debtors and creditors of [plaintiff]." (Complaint, ¶ 2.) Defendants do not dispute the nature and existence of the relationship. Plaintiff further alleged that, as practicing attorneys who had "taken the responsibility of preparing security agreements, perfecting security interests, and other related matters," defendants "had the duty to ensure that all such documents comported with the requirements of the Uniform Commercial Code and the laws of the State of Ohio." (Complaint, ¶ 10.) Thus, according to plaintiff's allegations, if the documents defendants prepared secured and perfected plaintiff's security interest and complied with the requirements of the UCC and the laws of Ohio, defendants did not breach their duty to plaintiff.

{¶ 36} Initially, to the extent plaintiff argues that the trial court erred in relying on North Carolina law rather than Ohio law to determine whether the financing statements were negligently drafted, plaintiff is incorrect. R.C. 1309.03(A)(2) provides that perfection of a security interest is governed by "the law of the jurisdiction where the collateral is when the last event occurs on which is based the assertion that the security interest is perfected or unperfected." The filing of the financing statement is usually that event, and is the basis upon which perfection is asserted here. See, generally, R.C. 1309.03, UCC 9–103, Official Comment 1 (1978). Because EAI of NC's assets were located in North Carolina at the time plaintiff's financing statements were filed, North Carolina law is applied to determine whether the financing statement documents, which

were prepared and filed to perfect plaintiff's security interest, comport with the requirements of the UCC and applicable law. In any event, Ohio and North Carolina have substantially identical versions of the UCC, with both states adopting a system of notice filing. See *Steego Auto Parts Corp. v. Markey* (1981), 2 Ohio App.3d 200, 201–202, 2 OBR 218, 441 N.E.2d 279; *In re Environmental Aspecs, Inc.,* 235 B.R. at 385–386.

{¶ 37} The doctrine of judicial estoppel precludes a party from assuming a position in a legal proceeding inconsistent with a position taken in a prior action. *Bruck Mfg. Co. v. Mason* (1992), 84 Ohio App.3d 398, 616 N.E.2d 1168; *Hilliard v. Lease* (1996), Franklin App. No. 95APE04–473, 1996 WL 17578, appeal not allowed, (1996), 76 Ohio St.3d 1419, 667 N.E.2d 23. It is an equitable doctrine intended to protect the integrity of the judicial process, which "is threatened when a litigant is permitted to gain an advantage by the manipulative assertion of inconsistent positions, factual or legal." *Helfand v. Gerson* (C.A.9, 1997), 105 F.3d 530, 535. The doctrine may be applied only where the party making the inconsistent assertion was successful with the prior assertion. Id., citing *Coal Resources, Inc. v. Gulf & Western Industries, Inc.* (C.A.6, 1989), 865 F.2d 761.

{¶ 38} According to plaintiff's complaint against defendants, defendants' duty was to ensure that the documents defendants drafted comported with the requirements of the UCC and applicable statutory provisions. The evidentiary materials submitted by the parties in connection with the trial court's consideration of defendants' summary judgment motion unequivocally demonstrate plaintiff's position in the bankruptcy court and federal district court proceedings to be that its financing statements comported with established case law and statutory requirements, including the pertinent provisions of the UCC, and validly perfected plaintiff's security interest in EAI of NC's assets. Indeed, plaintiff concedes here that it argued in the North Carolina proceedings that the financing statements and security agreements were "good enough" to satisfy the statutory requirements, and in its appeal to this court plaintiff "recognizes that the financing statement was sufficient under the UCC" to perfect its interests. (Plaintiff's brief on appeal, at 13, 15.) Because plaintiff successfully asserted that position in the prior proceedings, plaintiff is precluded by judicial estoppel from now arguing that, as to the financing statements and security agreement, defendants breached their duty to ensure that all such documents comported with the requirements of the law, or that defendants were negligent in their "effort to perfect the security interest of the Plaintiff relating to the collateral of the debtor, EAI, Inc. of North Carolina." Id.

{¶ 39}   Plaintiff nevertheless asserts that, but for defendants' negligent drafting of the financing statements, plaintiff would not have had an unsecured creditor status in EAI of NC's bankruptcy proceedings.   Plaintiff specifically contends that, although the documents complied with the requirements of law, the "confusion" resulting from defendants' failure to include "of North Carolina" in the debtor's name on the UCC financing statement coversheets resulted in plaintiff's being treated as an unsecured creditor and "forced" plaintiff to engage in unnecessary costly litigation to defend its security interest.   Resolution of plaintiff's contention is aided by clarifying the function of a financing statement and a security agreement.

{¶ 40}   "The function of a financing statement is to give notice to interested *third parties* that the person filing it may have a security interest in the property of the debtor named therein." (Emphasis added.)   *Natl. Bank of Fulton Cty. v. Haupricht Bros., Inc.* (1988), 55 Ohio App.3d 249, 255, 564 N.E.2d 101, 14 UCC Rep.Serv.2d 215; in accord, *Silver Creek Supply v. Powell* (1987), 36 Ohio App.3d 140, 146, 521 N.E.2d 828, 6 UCC Rep.Serv.2d 239 (holding the basic purpose of a financing statement is to provide notice to outside creditors that a secured claim has been perfected).   The propriety of the financing statement is "relevant only to disputes among secured creditors as to the relative priorities of their security interests in the securities as collateral."   *Lojek v. Pedler* (1986), 22 Ohio St.3d 71, 22 OBR 87, 488 N.E.2d 864, paragraph two of the syllabus.   It is irrelevant to the validity of the security interest as between the parties to a security agreement, in this case EAI of NC and plaintiff.   Id.

{¶ 41}   A security agreement creates or provides for a security interest. *In re Environmental Aspecs, Inc.*, 235 B.R. at 384.   "The purpose of the security agreement [is] to set forth the parties' agreement as to the existence of a security interest and the necessary terms and conditions therein."   *Silver Creek* at 146, 521 N.E.2d 828.   "[A] security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors." R.C. 1309.12.

{¶ 42}   Whether plaintiff is a "secured party" depends on whether EAI of NC and plaintiff manifested an intent in writing that plaintiff be a secured creditor of EAI of NC with a security interest in the assets of EAI of NC. *Silver Creek* at 144, 521 N.E.2d 828.   As the federal courts observed, Section 4.06 of the security agreement between plaintiff and EAI of NC expressly provides that the security agreement is to be governed by Ohio law.   See *In re Environmental Aspecs, Inc.*, 235 B.R. at 395, fn. 5.

{¶ 43}   The security agreement executed between EAI of NC, as "debtor," in favor of plaintiff, *as the "secured party,"* expressly "grants and conveys" to

plaintiff a security interest in assets of EAI of NC up to the principal amount of $299,694 due plaintiff on the promissory note by EAI of NC, plus attorney fees and costs incurred in collecting the debt. The security interest "attached" to the collateral, thereby creating an enforceable security interest between the parties to the transaction, because (1) the debtor signed the security agreement which contains a description of the collateral, (2) value was given in plaintiff's loan to EAI of NC, and (3) the debtor had rights in the collateral. Ohio R.C. 1309.14(A) and (B); *Lojek* at 73–74, 22 OBR 87, 488 N.E.2d 864; *Silver Creek* at 142, 521 N.E.2d 828; *Bowshier v. Chrysler Fin. Corp.* (S.D. Ohio 2001), 144 F.Supp.2d 919, 929; *In re Environmental Aspecs, Inc.*, 235 B.R. at 385.

{¶ 44} Because the security agreement did not explicitly postpone the time of attachment, plaintiff's security interest in the assets of EAI of NC attached and became effective between plaintiff and EAI of NC at the moment the above statutory requirements for the attachment were met. R.C. 1309.14(B); *Lojek* at 74, 22 OBR 87, 488 N.E.2d 864. Therefore, as between plaintiff and EAI of NC, the terms of the security agreement governed plaintiff's rights in the assets of EAI of NC, under which plaintiff was expressly granted a security interest in those assets. Ohio R.C. 1309.12; *Lojek* at 74, 22 OBR 87, 488 N.E.2d 864. The financing statements plaintiff filed were irrelevant in that regard.

{¶ 45} Significantly, according to statements of plaintiff and the federal courts, plaintiff was given unsecured creditor status in the bankruptcy proceedings because *EAI of NC*, not the bankruptcy court, listed plaintiff as an unsecured creditor in its bankruptcy filings. The record establishes that, as between plaintiff and EAI of NC, plaintiff was clearly a secured creditor where EAI of NC's president signed the security agreement on behalf of EAI of NC, the agreement described the collateral to be secured, and value was given for the agreement. As the federal district court reiterated:

{¶ 46} "[W]hen the security agreement, signed by the debtor, is appended to the financing statement, it is clear that the debtor has acknowledged the existence of the security agreement covering the collateral. Any result which suggests that a signed security agreement appended to an unsigned financing statement does not authenticate the existence of a security interest is simply inconsistent with logic and reason." *In re Environmental Aspecs, Inc.*, 235 B.R. at 390, fn. 3, quoting *J.K. Merrill & Son, Inc. v. Carter* (1985), 108 Idaho 749, 754–755, 702 P.2d 787.

{¶ 47} Defendants did not have a duty, and therefore did not breach a duty, to protect plaintiff against EAI of NC's wrongful treatment of plaintiff as an unsecured creditor. See *2175 Lemoine Ave. Corp. v. Finco, Inc.* (1994), 272 N.J.Super. 478, 485, 640 A.2d 346, 350 ("A lawyer, without express agreement, is not an insurer. * * * He is not answerable for an error of judgment in the

conduct of a case or for every mistake which may occur in practice. He does, however, undertake in the practice of his profession of the law that he is possessed of that reasonable knowledge and skill ordinarily possessed by other members of his profession."). See, also, *Simko v. Blake* (1995), 448 Mich. 648, 656–658, 532 N.W.2d 842 (holding "an attorney does not have a duty to insure or guarantee that the most favorable outcome possible," and "because no amount of work can guarantee a favorable result, attorneys would never know when the work they do is sufficiently more than adequate to be enough to protect not only their clients from error, but themselves from liability").

{¶ 48} Rather, according to plaintiff, defendants' duty was to ensure that plaintiff became a secured party with a perfected lien in the assets of EAI of NC up to the amount of EAI of NC's indebtedness to plaintiff. The federal courts in this case found, and plaintiff asserted below, that defendants *in fact* fulfilled this duty. Thus, plaintiff is now judicially estopped from claiming that defendants breached the duty of care owed to plaintiff in that regard.

{¶ 49} Under the circumstances of this case (1) where EAI of NC misclassified plaintiff as an unsecured creditor, (2) EAI of NC expressly agreed in the security agreement to be liable for "payment of all costs and expenses paid or incurred by the Secured Party in connection with the exercise of any right or remedy under the Agreement," and (3) plaintiff prevailed in both federal court proceedings, plaintiff perhaps should have looked to EAI of NC, rather than defendants, for reimbursement of any unnecessary legal fees plaintiff incurred in defending its security interest. However, as noted, the limited record before this court does not reflect whether such an award was considered.

{¶ 50} To the extent plaintiff contends that the financing statements are "confusing" to *third* parties, plaintiff's position is inconsistent with its position in the federal proceedings where plaintiff asserted that any third party would be "fairly put on notice" of plaintiff's claim and "could not merely rely on a search of the exact corporate name." Plaintiff declared in the federal district court proceedings:

{¶ 51} "The issue is not whether the debtor's name is exactly right but, rather, whether the name listed is similar enough to put a diligent examiner on notice to inquire further. In this case, the Bankruptcy Court correctly concluded that 'Environmental Aspecs, Inc.' and 'Environmental Aspecs, Inc. of North Carolina' were similar enough to put a diligent examiner on notice to review the full AAL Financing Statements which would have resolved any ambiguity." Plaintiff's brief filed in federal district court, at 9.

{¶ 52} Because plaintiff twice successfully asserted its position that the financing statements were not misleading, once before the bankruptcy court and

again before the federal district court, the doctrine of judicial estoppel precludes plaintiff from now asserting that the financing statements were confusing or misleading to a third party.

{¶ 53} Last, we note that plaintiff's complaint alleged that "[d]efendants negligently prepared a financing statement," and further asserted that "[d]efendants had the duty to ensure that all such documents comported with the requirements of the Uniform Commercial Code and the laws of the State of Ohio." In Ohio, the standard of care against which an attorney's conduct will be measured is generally established through expert testimony. *McInnis v. Hyatt Legal Clinics* (1984), 10 Ohio St.3d 112, 10 OBR 437, 461 N.E.2d 1295. Nonetheless, none of the parties filed evidence from experts. The bankruptcy court and the federal district court, however, arguably provided the necessary expertise to establish the requisite standard of performance by which defendants' conduct is measured. In any event, because both courts found that the financing statements and security agreements prepared and filed by defendants on behalf of plaintiff comported with the applicable requirements of law, including pertinent UCC provisions and North Carolina and Ohio law, and validly perfected plaintiff's security interest in the assets of EAI of NC, plaintiff cannot sustain its claim regarding negligent preparation of the financing statements.

{¶ 54} Plaintiff's first assignment of error also asserts that the common pleas court erred in granting summary judgment regarding the subordinated loan agreement defendants drafted. Plaintiff contends that it sustained damages because defendants negligently researched and drafted the subordinated loan agreement that inaccurately attempted to subordinate plaintiff's secured interest to the bank's purportedly superior interest, later discovered to be nonexistent.

{¶ 55} In its memorandum contra defendants' motion for summary judgment, plaintiff submitted two affidavits, a copy of the UCC financing statement coversheet defendants prepared and filed with the North Carolina Secretary of State, and a copy of the subordinated loan agreement defendants drafted. When viewed in a light most favorable to plaintiff, the documents and the proffered affidavits fail to set forth specific facts supporting plaintiff's claim that plaintiff sustained damages as a result of a breach of defendants' duty of care in researching and preparing the subordinated loan agreement. Rather, plaintiff sets forth specific facts that the "damages" incurred were due exclusively to the preparation and filing of the financing statements, as follows:

{¶ 56} "7. But for the conduct of the firm of Kegler, Brown, Hill & Ritter in *preparing and filing the UCC financing statement* in the name of Environmental Aspects, Inc. [sic], the parent company of Environmental Aspects, Inc. [sic], of North Carolina, the adversary proceeding would not have been required.

{¶ 57} "8. * * * *Had the UCC Financing Statement accurately reflected* the name of Environmental Aspects, Inc. [sic] of North Carolina, it is unlikely that SouthTrust Bank would have filed any of the above referenced motions * * * to warrant such a vigorous prosecution * * *.

{¶ 58} "* * *

{¶ 59} "11. There would have been time involved in representing Advanced Analytics Laboratories Inc. with respect to the bankruptcy of Environmental Aspects, Inc. [sic] of North Carolina even if the law firm of Kegler, Brown, Hill, & Ritter had not prepared and filed an incorrect financing statement. However, the amount of time and money expended would have been significantly reduced * * * *had the financing statement been properly prepared and filed* * * *." (Emphasis added.) Plaintiff's brief, Exhibit D.

{¶ 60} Under the circumstances of this case, where plaintiff failed to establish each element of its claim for legal malpractice, summary judgment was properly granted against its complaint. Plaintiff's first assignment of error is overruled.

{¶ 61} In its second assignment of error, plaintiff asserts that the trial court erred in granting defendants' request for a protective order that prevented plaintiff from deposing defendants prior to deciding their motion for summary judgment. Plaintiff contends that the court erred in granting summary judgment without allowing plaintiff to support its legal malpractice claim by discovering what measures defendants took in their research and preparation of the financing statements and subordinated loan agreement.

{¶ 62} In their summary judgment motion, defendants had asked the court to decide (1) whether plaintiff was judicially estopped from pursuing its legal malpractice claims, and (2) whether plaintiff's purported damages were recoverable as a matter of law. Plaintiff filed a Civ.R. 56(F) motion for continuance to allow plaintiff additional time to "adequately respond to Defendants' motion for Summary Judgment." In support, plaintiff submitted an affidavit by its counsel, which stated:

{¶ 63} "4. I have been attempting to schedule the depositions of the Defendants in this case. At this time, the deposition of Defendant Wolper is tentatively scheduled for December 6, 1999. The deposition of Defendant Hoke has been requested but has not been scheduled.

{¶ 64} "5. I have made a demand on the Defendants for the Plaintiff's client file which is currently in the possession of the Defendants.

{¶ 65} "6. In order to properly respond to the Motion for Summary Judgment, I must depose the Defendants and review the Plaintiff's client file which is currently in the possession of the Defendants.

{¶ 66} "7. In order to properly respond to the Motion for Summary Judgment, I may need to secure affidavits from the Plaintiff's former North Carolina attorney as well as other possible witnesses."

{¶ 67} In an ex parte order, the trial court granted plaintiff further discovery. Defendants then moved for a protective order staying all discovery and vacating the court's ex parte order. In response, plaintiff contended that it must have the depositions of defendants before it could file a complete and proper response to defendants' motion for summary judgment. Plaintiff further contended that the determination of whether it had a cause of action in negligence should be based on the facts of this case for which additional discovery was needed. The trial court concluded that a continuance was unwarranted under Civ.R. 56(F) because plaintiff failed to demonstrate that further discovery was needed to meet the substance of defendants' motion for summary judgment.

{¶ 68} In *Gates Mills Invest. Co. v. Pepper Pike* (1978), 59 Ohio App.2d 155, 168–169, 13 O.O.3d 191, 392 N.E.2d 1316, the court stated:

{¶ 69} "Civ.R. 56 affords a party a mechanism whereby it can seek deferral of action on a motion for summary judgment so that it may obtain affidavits opposing the motion or conduct discovery relevant to it. Civ.R. 56(F). Civ.R. 56(F) requires the opposing party to submit affidavits with sufficient reasons stating *why* it cannot present by affidavit facts sufficient to justify its opposition. Mere allegations requesting a continuance or deferral of action for the purpose of discovery are not sufficient reasons why a party cannot present affidavits in opposition to the motion for summary judgment. *There must be a factual basis stated and reasons given why it cannot present facts essential to its opposition to the motion.*" (Emphasis added.) In accord, *Glimcher v. Reinhorn* (1991), 68 Ohio App.3d 131, 138, 587 N.E.2d 462, 18 UCC Rep.Serv.2d 511; *Ramsey v. Edgepark, Inc.* (1990), 66 Ohio App.3d 99, 105–106, 583 N.E.2d 443. Thus, the burden is on the party seeking to defer the court's action on a motion for summary judgment to demonstrate that a continuance is warranted. *Glimcher*, supra. A decision whether to grant the continuance is within the trial court's discretion. *Gates Mills* at 169, 13 O.O.3d 191, 392 N.E.2d 1316.

{¶ 70} The trial court did not abuse its discretion in denying plaintiff's request for a continuance to respond to defendants' motion for summary judgment. Plaintiff's reasons for the requested continuance were general in nature, with no particularized factual basis to indicate *why* further discovery was needed to respond to the legal issues on which defendants' motion for summary judgment was predicated, or how further discovery would aid the trial court in resolving the legal issues before it. Plaintiff did not meet its burden of demonstrating that a continuance was warranted for further discovery. The trial court therefore acted within its discretion in issuing the order staying discovery and vacating its earlier

ex parte order that granted a continuance for further discovery. Plaintiff's second assignment of error is overruled.

{¶ 71} Having overruled plaintiff's two assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

BOWMAN and KLATT, JJ., concur.