DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from a judgment issued by the Lucas County Court of Common Pleas following a jury trial. It involves the behavior of a trustee bank in the pledge of certain trust assets. Because we conclude that the trial court committed no prejudicial error and the jury's verdict was not against the manifest weight of the evidence, we affirm.
 {¶ 2} In January 2000, appellant, Raymond Saba, filed suit against appellee, Fifth Third Bank of N.W. Ohio, N.A. ("Fifth Third"). Appellant alleged that the bank, acting as trustee for appellant's trust, breached its fiduciary duties and acted without authorization in pledging trust assets.
 {¶ 3} At trial, the following facts were presented to the jury. Raymond Saba set up a revocable trust at Fifth Third Bank with his wife and two sons as the primary beneficiaries. The trust contained approximately $800,000 worth of assets. The trustee bank was granted broad powers, including the authority to "sell, convey, exchange, mortgage, pledge * * * or otherwise contract with respect to, deal in, and dispose of all or any part of the trust assets * * * on such terms and conditions as the trustee, in its discretion, may deem either necessary, advisable, or expedient * * *."
 {¶ 4} In 1995, Blair Saba, appellant's son who was a building contractor, sought to take out a loan with Fifth Third to build two "spec" homes. Fifth Third determined that Blair, who already had several outstanding construction loans, did not have sufficient collateral for the additional loans.
 {¶ 5} Appellant and Blair met with Jerry Straub, the bank's commercial loan officer. Straub explained to appellant and Blair that the loan could be made if appellant would pledge the trust assets as a guarantee. Marsha Manahan, the trustee on appellant's Fifth Third trust, discussed with appellant the ramifications and procedures of pledging the trust assets. In January 1996, appellant signed a $247,800 promissory note and various loan documents for the benefit of his son Blair. Manahan, as trustee, executed a pledge and assignment of the trust assets to guarantee this loan. This loan was repaid.
 {¶ 6} In 1997, appellant's son, Bruce, the owner of a local successful restaurant, talked with Jerry Straub about a $200,000 loan to operate another restaurant. Bruce and appellant met with Straub to discuss the loan. Straub told Bruce that the bank could not make the loan because he had insufficient collateral. Straub stated that the bank would make the loan if appellant wanted to pledge trust assets, as he had done for Blair. Later that day, Bruce called Straub, informing him that his father had agreed to the pledge.
 {¶ 7} Straub testified that he then notified Marcia Manahan about the pledge, asking her to discuss this with appellant. Manahan testified that she, as was her custom, called appellant and asked if he wanted to help Bruce the same way he had helped Blair. She explained to him that the same type of procedures would be used, and if default occurred, the bank would look to the trust assets for repayment of the loan. Manahan testified that appellant consented. As a result, she then drew up a pledge and assignment agreement for assets of $200,000 in the Raymond Saba Trust, No. 7528185. Manahan signed it as trustee, dated it September 3, 1997, and sent it on to Jerry Straub in the commercial loan department. On her file copy, she attached a post-it note which said "Ray said okay."
 {¶ 8} On September 3, 1997, Bruce Saba, the only shareholder, signed loan documents on behalf of "Kokomo's, Inc.," the corporation under which he would be operating the new restaurant business. The original loan amount was $200,000. Appellant did not sign any documents regarding this loan or assignment and pledge.
 {¶ 9} In early October 1997, Bruce indicated to Straub that the project was over budget, and he needed an additional $25,000. Straub contacted Manahan about raising the loan amount. Manahan stated that her usual procedure would have been to call the donor, but that she could not specifically recall any phone conversation with Raymond Saba about the additional funds. She testified that she drafted a second pledge and assignment for $225,000, signed it, and sent it on to Straub. Manahan stated that she then moved the post-it note from the copy of the original pledge to the new pledge in her file.
 {¶ 10} On October 24, 1997, Bruce executed documents for the new $225,000 loan. This loan paid off the initial $200,000 and provided the additional $25,000 in funding. Again, appellant signed nothing in connection with the loan or the pledge. In February 1998, Bruce called Straub to request a temporary reduction in payments, since cash-flow at Kokomo's was not as anticipated. Straub, on behalf of Fifth Third, rewrote the loan, reducing the payments. By June 1998, Kokomo's was, nevertheless, in default. It remained so until August 1999, when Straub instructed the bank's attorney to demand payment from the trust.
 {¶ 11} On August 16, 1999, Manahan sent a letter to appellant, apprising him that his son had defaulted on the loan, informing him that she would need to liquidate a portion of the trust assets to pay the pledge. Appellant called Manahan and instructed her not to pay anything until he had spoken with his lawyer. Manahan also corresponded with the bank's attorney, rejecting a claim for an additional $15,000 "working capital" loan owed by Kokomo's, stating that it was not covered under the trust pledge and assignment.
 {¶ 12} Over the next few months, several meetings took place involving Straub, the bank attorney, Manahan, Bruce and his lawyer (Bruce and appellant had the same lawyer). Ultimately, an agreement was reached between Bruce and the bank. Manahan, the trustee, agreed to pay Fifth Third $21,462 from trust assets to bring current the balance owed on the loan.
 {¶ 13} At trial, appellant testified that he did not recall any of the phone conversations with Manahan for either Blair's or Bruce's loans. Appellant also stated that he never signed anything or consented to pledging the trust for Bruce's loan. At one point, however, he stated that he may have given verbal consent, but simply did not recall it. He did remember the phone call in which he told Manahan not to disburse any of the trust assets until he talked with his lawyer. Appellant also stated that through his attorney he requested that Manahan turn over all trust assets and cease to act as trustee. Manahan responded by stating that she would transfer the assets to another designated trust, but would have to retain $225,000 of assets, the amount of the pledge and assignment.
 {¶ 14} At the end of trial, both parties moved for directed verdicts which the trial court denied. The jury decided in favor of the bank, specifically finding that Fifth Third had obtained authorization to pledge the trust assets for both the $200,000 and the $225,000 loans and the bank had not violated its fiduciary duties as trustee of appellant's trust.
 {¶ 15} Appellant now appeals, setting forth the following eight assignments of error:
 {¶ 16} "1. The Lower Court erred in failing to hold that the Bank, as Trustee, lacked authority to pledge assets of the Saba Trust as collateral for the Second Kokomo's Loan.
 {¶ 17} "2. The Lower Court erred in failing to hold that the Bank's Assignment and Pledge form did not, by its terms, create an enforceable security interest in the assets of the Raymond Saba Trust.
 {¶ 18} "3. The Lower Court erred in failing to hold that a transfer to the secured party was necessary to create an effective pledge of securities in the Raymond Saba Trust.
 {¶ 19} "4. The Lower Court erred in failing to hold that the Bank breached its Fiduciary duties and exceeded its authority by continuing to act as Trustee and retaining Trust Assets after Appellant directed it to cease doing so.
 {¶ 20} "5. The Lower Court erred in failing to hold that the Bank, as Trustee, violated its fiduciary duties by failing to interpose defenses or otherwise resist payment of the Bank's own claims against the Trust.
 {¶ 21} "6. The Lower Court erred in failing to instruct the jury on the tort of conversion.
 {¶ 22} "7. The Lower Court erred in failing to instruct the jury on punitive damages.
 {¶ 23} "8. The Lower Court erred in failing to grant the Plaintiff's Motion for Injunctive Relief."
 {¶ 24} Appellee/cross-appellant appeals setting forth the following sole assignment of error:
 {¶ 25} "The trial court erred in refusing to grant the bank summary judgment."
 I. {¶ 26} Appellant, in his first assignment of error, contends that the trial court erred in ruling that the trustee had authority to pledge assets of the Saba Trusts as collateral for the second Kokomo loan. Essentially, appellant argues that, as a matter of law, the trustee was required to obtain written consent from the donor or, in the exercise of its discretionary powers, should have conducted an investigation into the merits of the loan transaction.
 {¶ 27} The applicable version of R.C. 2109.44 provides, in pertinent part,
 {¶ 28} "Fiduciaries shall not buy from or sell to themselves nor shall they in their individual capacities have any dealings with the estate, except as expressly authorized by the instrument creating the trust and then only to the extent expressly permitted by section 1111.13
or 1111.14 of the Revised Code or with the approval of the probate court in each instance; but no corporate fiduciary that is not subject to examination or regulatory oversight by the superintendent of financial institutions, the comptroller of the currency, or the office of thrift supervision shall be permitted to deal with the estate, any power in the instrument creating the trust to the contrary notwithstanding. This section does not prohibit a fiduciary from making an advancement, when such advancement has been expressly authorized by the instrument creating the trust or when the probate court approves."
 {¶ 29} In addition to the instrument creating the trust, the authority of a trustee is limited by statutory and common law. R.C.1702.12(F); In Re Estate of Binder (1940), 137 Ohio St. 26, 41; Restatement (Second) of Trusts, Section 348, Comment (f). A trustee cannot "take advantage of liberal provisions of a trust instrument to relieve himself from the legal responsibility of a fiduciary under the law." In Re Estate of Binder, supra, at 43-44.
 {¶ 30} "Self-dealing or breach of good faith on the part of a trustee * * * cannot be excused on the ground that the instrument creating the trust and making him trustee gave him broad authority and unlimited discretion in the administration of the trust." Id., at paragraph ten of the syllabus. This rule of law does not, however, automatically apply to a mere conflict of interest. See Huntington Nat'lBank v. Wolfe (1994), 99 Ohio App.3d 585, 597-598. When engaging in transactions that involve a potential conflict of interest, the trustee must exercise a high degree of care and utmost good faith, and such transactions will be carefully scrutinized by the courts. See In reEstate of Binder, supra, at 33-34.
 {¶ 31} In this case, the terms of the trust give the trustee extremely broad authority over the management of the trust, including the sale or encumbrance of those assets for the benefit of beneficiaries. We can find nothing in the trust language, statutory requirements, or common law requiring the trustee to obtain written consent of the donor before exercising its authorized powers. In our view, the trustee had the power to enter into the pledge agreement without obtaining the written consent of the donor, as long as the trustee's actions do not constitute self-dealing or a breach of good faith. Nonetheless, the potential for conflict between Fifth Third's roles as trustee and as lender created an issue of fact for the jury as to whether or not the trustee exercised the degree of care required.
 {¶ 32} Upon review of a jury verdict, an appellate court utilizes a manifest weight of the evidence standard. Seasons Coal Co. Inc. v.Cleveland (1984), 10 Ohio St.3d 77, 80. Under this standard, a judgment supported by some competent, credible evidence will generally not be overturned by a reviewing court and facts as found by the trier-of-fact are presumed to be correct. Id.
 {¶ 33} In the present case, the jury specifically found that the bank obtained consent and authorization from appellant, Raymond Saba, for the pledge of the trust assets. Our review of the record discloses that testimony was presented that Marcia Manahan obtained appellant's consent via a phone call for the initial $200,000 loan, as well as for the "roll-over" loan of $225,000, even though she did not specifically recall a second conversation. In contrast, appellant testified that he could not recall giving his consent, but that it was possible that he had.
 {¶ 34} Moreover, the loan to purchase and operate a restaurant was made for the benefit of a beneficiary, Bruce Saba, who had life-long experience in the restaurant business and was successfully operating another restaurant. Appellant had previously approved a pledge of more than $247,000 for the construction loan made on behalf of his other son, Blair. Therefore, under the facts presented and the terms of the trust, we cannot say that the jury's finding that the trustee was authorized to pledge the assets of the trust was against the manifest weight of the evidence.
 {¶ 35} Accordingly, appellant's first assignment of error is not well-taken.
 II. {¶ 36} We will address appellant's second and third assignments of error together. Appellant, in his second assignment of error, contends that the security agreement did not create a valid enforceable security interest. In his third assignment of error, appellant claims that the trial court erred in failing to find that the security interest in the trust assets could not be enforced.
 {¶ 37} At the time the two loans and pledges were entered into, R.C. 1309.14(A) provided that a security interest in collateral is enforceable if 1) "a debtor has signed a security agreement which contains a description of the collateral;" 2) "value has been given;" and 3) "the debtor has rights in the collateral." Attachment of a security interest occurs when all of the preceding events have occurred. R.C.1309.14(B).
 {¶ 38} In the present case, the security agreement specifically describes the collateral, the Raymond Saba Trust, number 7528185. The ultimate loan amount of $225,000 is the value given. And, as we have already determined, the trustee had certain broad rights over the collateral, the trust assets. Therefore, we conclude the security agreement created a valid security interest in the trust.
 {¶ 39} We now address whether that security agreement was enforceable. The purpose of a security agreement is to specify the necessary terms and conditions of the parties' agreement as to the existence of a security interest in collateral. Silver Creek Supply v.Powell (1987), 36 Ohio App.3d 140, 146. The filing of a financing statement gives "notice to interested third parties that the person filing it may have a security interest in the property of the debtor named therein." Natl. Bank of Fulton Cty. v. Haupricht Bros., Inc. (1988), 55 Ohio App.3d 249, 255. The perfection of a security interest by filing a financing statement is "relevant only to disputes among secured creditors as to the relative priorities of their security interests in the securities as collateral." Lojek v. Pedler (1986),22 Ohio St.3d 71, paragraph two of the syllabus. Perfection is irrelevant to the validity of the security interest as between only the parties to a security agreement. Id.
 {¶ 40} In this case, the pledges created a specific valid security interest in the Raymond Saba Trust as a whole, not just particular trust assets. Consequently, over the duration of the loan, the assets in the trust might change while still providing adequate security under the agreement. Moreover, there are no other creditors asserting security interests of a higher priority to the assets of the trust. Thus, whether or not appellee filed a financing statement is irrelevant to the enforceability of the security interests created by the contract between the parties. Therefore, the trial court did not err in determining that the pledges created a valid, enforceable security interest in the trust assets.
 {¶ 41} Accordingly, appellant's second and third assignments of error are not well-taken.
 III. {¶ 42} Appellant, in his fourth and fifth assignments of error, argues that Fifth Third breached its fiduciary duties. In his fourth assignment of error, appellant contends that the bank exceeded its authority by continuing to act as trustee and retaining trust assets. In his fifth assignment of error, appellant claims that the trustee failed to defend against or resist payment of Fifth Third's claims.
 {¶ 43} A trustee's paramount concern is the preservation of the trust corpus in compliance with the terms of the trust. First Natl. Bankof Middleton v. Gregory (1983), 13 Ohio App.3d 161, 163; Bd. of Edn. v.Unknown Heirs of Aughinbaugh (1955), 99 Ohio App. 463, 471. An action by the trustee that is in compliance with the trust language, even though appearing to be contrary to the wishes of the donor or beneficiaries, is not necessarily a breach of the trustee's fiduciary duty. See In reTrust of Papuk (Mar. 7, 2002), Cuyahoga App. No. 80078.
 {¶ 44} In this case, we have already determined that a valid, authorized pledge existed against trust assets. Thus, Manahan, as trustee, was obligated to deal with any claims against and preserve assets in compliance with the trust terms. The trust language specifically authorized the trustee to "defend, settle, adjust, compromise, pay or discharge any claim * * * against any of the trusts, upon such terms and conditions and in such manner as the Trustee, in its discretion, may deem either necessary, advisable, or expedient." Appellant could have transferred all but the $225,000 pledged amount into another trust, but chose not to do so.
 {¶ 45} In our view, Manahan, by working out a lesser payment to bring Bruce's loan current, attempted to preserve trust assets and did, in fact, resist payment of the full amount of the loan at the initial demand. She also refused a claim presented by the bank's attorney, explaining that certain "working capital" loans were not guaranteed under the terms of the pledge. As we noted before, a jury verdict will not be overturned unless the decision was against the manifest weight of the evidence. Seasons Coal Co. v. Cleveland, supra. Therefore, we cannot say that the jury's determination that Fifth Third did not breach any fiduciary duties in administering the trust was against the manifest weight of the evidence.
 {¶ 46} Accordingly, appellant's fourth and fifth assignments of error are not well-taken.
 IV. {¶ 47} Appellant, in his sixth and seventh assignments of error, contends that the trial court erred in failing to instruct the jury on the tort of conversion and on punitive damages. Appellant argues that the trustee's retaining of the assets and payment of the $21,000 in settlement constituted evidence in support of theses claims.
 {¶ 48} Conversion is "any exercise of dominion or control wrongfully exerted over the personal property of another in denial or under a claim inconsistent with his rights." Cent. Benefits Mut. Ins.Co. v. RIS Admrs. Agency, Inc. (1994), 93 Ohio App.3d 397, 402, quotingOhio Tel. Equip. Sales, Inc. v. Hadler Realty Co. (1985),24 Ohio App.3d 91, 93.
 {¶ 49} In this case, the only evidence presented regarding any wrongful exercise of control was provided by appellant's vague and often contradictory testimony. Although appellant at one point stated that he did not give permission for the pledge, he later at trial and in deposition acknowledged that he simply did not remember. In addition, the $21,000 settlement payment was made by the trustee pursuant to an agreement sanctioned by appellant's own attorney. Appellant now claims this payment was a wrongful conversion of the trust assets even though it protected the other client of appellant's attorney — appellant's son, who had personally guaranteed the $225,000 loan. Appellant's counsel has apparently ignored the irreconcilable conflict of interest in representing both appellant and his son in these matters.
 {¶ 50} Moreover, for argument's sake, even if a jury instruction as to conversion was justified, any error resulting from the failure to give the instruction would be harmless. The jury's specific findings as to the bank's non-breach of its fiduciary duties or actions regarding the pledge, negate any establishment of the tort of conversion. Therefore, the trial court did not err in refusing to instruct the jury on the tort of conversion.
 {¶ 51} We now turn to appellant's claim for punitive damages. An injured party may recover compensatory and consequential damages on a contract claim, but punitive damages are not available, regardless of the breacher's motive. See Digital Analog Design Corp. v. North SupplyCo. (1989), 44 Ohio St.3d 36, 45-46.
 {¶ 52} Since we have determined that the trial court properly eliminated the jury instructions for conversion, we conclude that no jury instructions as to punitive damages were warranted.
 {¶ 53} Accordingly, appellant's sixth and seventh assignments of error are not well-taken.
 V. {¶ 54} Appellant, in his eighth assignment of error, argues that the trial court erred in failing to grant his motion for injunctive relief.
 {¶ 55} Injunctive relief is an equitable remedy that is available only where there is no adequate remedy at law. Haig v. Ohio State Bd. ofEdn. (1992), 62 Ohio St.3d 507, 510. A party seeking a permanent injunction must show by clear and convincing evidence that the injunction is necessary to prevent irreparable harm and that the party does not have an adequate remedy at law. Procter Gamble Co. v. Stoneham (2000),140 Ohio App.3d 260, 267-68. The grant or denial of an injunction is solely within the trial court's discretion and, therefore, a reviewing court should not disturb the judgment of the trial court absent a showing of a clear abuse of discretion. Perkins v. Quaker City (1956),165 Ohio St. 120, 125.
 {¶ 56} In the present case, appellant requested a permanent injunction after a jury verdict categorically determined that he did not succeed on the merits of his claims. Since appellant did not succeed in convincing a jury of the matter of the underlying premise of his claims, we conclude that the trial court did not abuse its discretion in denying appellant's request for a permanent injunction.
 {¶ 57} Accordingly, appellant's eighth assignment of error is not well-taken.
 VI. {¶ 58} We now address appellee/cross-appellant's sole assignment of error, in which it argues that the trial court erred in denying appellee's motion for summary judgment. Appellee contends that the trial court erroneously determined that, despite broadly written terms of the trust, the trustee needed appellant's consent in order to make the pledges.
 {¶ 59} In this case, although the trust may have given the trustee broad powers and authority, there still remained genuine issues of fact regarding whether that authority was exercised in a prudent manner. Although not strictly required by the terms of the trust or other law, we agree that the better procedure for the trustee would have been to confirm appellant's consent to the pledge in writing. Thus, the facts and issues as to appellant's consent to the pledges, while not pertinent to the basic authority granted by the trust, did have a bearing on documentation procedures, possible conflicts of interest, and an alleged breach of fiduciary duties. Thus, we cannot say that the trial court's denial of summary judgment was in error.
 {¶ 60} Accordingly, appellee/cross-appellant's sole assignment of error is not well-taken.
 {¶ 61} The judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to equally to appellant and appellee.
JUDGMENT AFFIRMED.
Peter M. Handwork, J., James R. Sherck, J., and Richard W. Knepper,J., CONCUR.