**COMER, Trustee, Appellant and Cross–Appellee,**

v.

**CALIM, Appellee and Cross–Appellant.**

[Cite as *Comer v. Calim* (1998), 128 Ohio App.3d 599.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–970603 and C–970635.

Decided June 26, 1998.

600

*Charles Atkins*, for the appellant and cross–appellee.

*Paul M. Courtney*, for appellee and cross–appellant.

GORMAN, Presiding Judge.

This is an appeal and a cross-appeal from the disposition of an action in replevin by Daniel S. Comer in his capacity as the trustee of the Comer family trust. The action concerned assets in the possession of Precision Swage, Ins. ("PSI"), a company owned by Comer in his individual capacity. The trust sought to establish that it had a prior lien on the assets superior to that of Aman J. Calim. Calim had sold PSI to Comer and was asserting a judgment lien against the same assets as a result of a lawsuit arising out of the sale. The trial court ruled in favor of Calim despite the fact that the trust's security interest was first in time. In its sole assignment of error, the trust argues that the trial court erred in rendering judgment in favor of Calim. In his cross-appeal, Calim argues that the trial court erred by amending its entry granting him a monetary judgment against the trust to one giving him only a first-priority lien. For the

reasons that follow, we find no error in either the appeal or the cross-appeal and thus affirm the trial court.

## I

The relevant facts of this case are not complex. The Comer family trust was established by Comer's parents as an estate-planning tool in 1989. Comer was the trustee. After Comer in his individual capacity purchased PSI from Calim, the trust began loaning money to PSI. The loans eventually totaled more than $800,000. For each loan, a promissory note was executed together with a security agreement covering certain of PSI's assets. However, it was not until August 24, 1995, that Comer, acting as trustee, filed a UCC financing statement to perfect the trust's security interest in the assets. The reason for the filing was that earlier, on August 14, 1995, Calim had received a decision in his favor against PSI from the Shelby County Court of Common Pleas in a suit arising from the sale of PSI. After the court had found in favor of Calim, but before it had reduced its decision to judgment, Comer conferred with his attorney and, as a result of that consultation, filed the financing statement on behalf of the trust. One month later, the Shelby County Court of Common Pleas entered judgment in the approximate amount of $60,000 against PSI in favor of Calim. Based upon this judgment, Calim obtained an order of sale directing the sheriff of Shelby County to seize and sell the personal property of PSI. According to Comer, the approximate value of the assets of PSI is $200,000.

The trust subsequently brought an action in replevin against both PSI and Calim in which it sought judgment against PSI for $827,362.09, plus interest, an entry declaring its lien senior and superior to all other claims, and permanent possession of PSI's assets. Calim counterclaimed that PSI's transfer of the assets to the trust was fraudulent under the Ohio Fraudulent Transfer Act.

Both the trust and Calim filed motions for summary judgment. The trial court granted Calim's motion and denied the trust's.

## II

In its first assignment of error, the trust argues that the trial court erred in holding that the transfer of PSI's assets was fraudulent as a matter of law. Specifically, the trust argues that trial court erred by not holding the transfer to be controlled by the language of R.C. 1336.08(E)(2). That section states that a transfer is not fraudulent under R.C. 1336.05 if it is made "in the ordinary course of business or financial affairs of the debtor and the insider." According to the trust, the six-year period of loans from it to PSI—loans which it describes as necessary to continue and expand the business—established a "course of business

or financial affairs" that satisfied the statutory requirement for a nonfraudulent transfer.

Calim, on the other hand, argues that the trial court correctly concluded that the transfer was fraudulent under R.C. 1336.05(B). That section provides that a transfer is fraudulent with respect to a creditor if (1) the creditor's claim arose before the transfer, (2) the transfer was made to an insider for an antecedent debt, (3) the debtor was insolvent at the time of the transfer, and (4) the insider had reasonable cause to believe that the debtor was insolvent.

## Transfer

As framed by the parties during oral argument, the dispositive issue on appeal is not whether Comer was an insider at PSI or whether PSI was insolvent. The trust is willing to concede both points for the sake of argument. Rather, the key issue is when a transfer occurs for the purposes of the Ohio Fraudulent Transfer Act. This determination is crucial for two reasons. First, it establishes whether Calim's claim arose before the transfer of the assets to the trust. Second, it establishes whether the "ordinary course of business or financial affairs" between PSI and the trust involved a series of transfers or only one.

It is Calim's position that the transfer was not effected until the trust belatedly filed a UCC financing statement to perfect its interest in the assets—a filing that even the trust admits was motivated by Calim's receiving a favorable decision from the Shelby County Court of Common Pleas against PSI. The statutory basis of Calim's argument is R.C. 1336.06, which determines when a transfer is made or an obligation incurred. The relevant portion provides:

"For the purposes of this chapter:

"(A)(1) A transfer is made if either of the following applies:

"* * *

"(b) With respect to an asset that is not real property or that is a fixture, when the transfer is so far perfected that a creditor on a simple contract cannot acquire a judicial lien otherwise than under this chapter that is superior to the interest of the transferee."

According to Calim, transfer of PSI's assets to the trust was not "so far perfected" as to defeat any subsequent creditor until the filing of the financing statement. Hence, Calim argues, because the financing statement was not filed until after he received a favorable decision from the Shelby County Court of Common Pleas, the transfer to the trust occurred only after his claim arose. Further, Calim asserts that it cannot be said that the transfer was part of a series in the "ordinary course of business or financial affairs" between PSI and the trust because no other financing statement had ever been filed.

The trust, on the other hand, argues that the transfer of assets in this case occurred long before the filing statement was ever filed. In the trust's view, PSI's assets were being transferred to the trust over the entire six-year period that it was loaning money to the business and accepting the assets as collateral. In support of its position, the trust cites the definition of "transfer" set forth in R.C. 1336.01(L):

" 'Transfer' means every direct or indirect, absolute or conditional, and voluntary or involuntary method of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, and creation of a lien or other encumbrance."

According to the trust, the above language was satisfied when PSI parted with an interest in its inventory and substantially all of its assets by signing a series of security agreements pledging its assets to secure the payment of the demand notes to the trust. As the trust correctly points out, the absence of a UCC financing statement did not in any way diminish the enforceability of the security agreements between the trust and PSI. *Lojek v. Pedler* (1986), 22 Ohio St.3d 71, 22 OBR 87, 488 N.E.2d 864. This being so, the trust argues, such a series of transfers constituted a course of conduct that R.C. 1336.08(E)(2) expressly declares nonfraudulent.

▮▮ We agree with both the trial court and Calim. The trust's argument is based entirely upon the isolated definition of the word "transfer" as it appears in the definitional section of the Ohio Fraudulent Transfer Act. However, R.C. 1336.06 specifically and expressly addresses the narrower issue of when a transfer is made for the purposes of the Act. Accordingly, we are confronted with the simple canon of statutory construction that specific legislation prevails over general. R.C. 1.51 and 1.52(A). See, also, *State v. Mitchell* (Sept. 4, 1997), Franklin App. No. 97APA03–351, unreported, 1997 WL 559463. R.C. 1336.06, the more specific statute, clearly provides that the transfer of the assets in this case did not occur until the trust's security interest was perfected.

▮▮ Further, the trust's position is inconsistent with the Act's definition of an encumbered asset. "Assets" are broadly defined in R.C. 1336.01(B)(1) to include "all property of the debtor" except "property to the extent it is encumbered by a valid lien." Although an unperfected security interest meets the definition of a "lien" under R.C. 1336.01(H), it does not meet the definition of a "valid lien" under R.C. 1336.01(M). In order to be a "valid lien" under that section, the lien must be "effective against the holder of a judicial lien subsequently obtained by legal or equitable process or proceedings." In order for this to be true, the security interest must be perfected under R.C. 1309.20 (UCC 9–301). Otherwise, without perfection, the asset is not "encumbered by a valid lien"

and still falls within the definition of an asset belonging to the debtor. See *CECOS Internatl., Inc. v. Schregardus* (1993), 87 Ohio App.3d 653, 622 N.E.2d 1119.

Finally, the principle that a transfer is not complete until it is perfected is incorporated into R.C. 1336.06(A)(2)(b). That section provides that if applicable law does not permit the transfer to be perfected, the transfer is made when it becomes effective between the debtor and the transferee. By implication, when applicable law *does* permit the transfer to be perfected, the transfer is not made until the security interest is perfected. Significantly, the Act further provides that when no steps are taken to perfect a transfer that applicable law allows to be perfected, the transfer is "deemed made immediately before the commencement of the action." R.C. 1336.06(A)(2)(a). According to the comment to the Uniform Fraudulent Transfer Act, the latter provision was considered necessary because a transfer that can be perfected but is not would be arguably immune from attack. National Conference of Commissioners on Uniform State Laws, Uniform Fraudulent Transfer Act (1984), Comment 1 to Section 6. That provision and that comment would be superfluous under the trust's view that the imparting of a perfectable but unperfected security interest is itself a transfer under the Act.

We hold, therefore, that, for purposes of the Ohio Fraudulent Transfer Act, the transfer of the assets to the trust did not occur until the filing of the UCC financing statement. Accordingly, we further hold that, as a matter of law, the course of business between the trust and PSI did not involve a series of transfers, but only one. The one transfer was anomalous, not ordinary, and was, by the trust's own admission, accomplished for the purpose of defeating Calim's existing claim to the assets.

### Fraud

Although during oral argument the parties narrowed the central issue in the dispute to the meaning of the word *transfer*, the trust also raises the issue of whether it can be said that the transfer in this case was fraudulent. While the trust approaches this issue based upon its discredited view of when the transfer occurred, the presence of fraud nevertheless remains an issue.

According to the trust, all the loans it made to PSI were for the purpose of providing money to supplement PSI's cash requirements for continuing and expanding the various facets of the business. The trust further emphasized that the transfer effected by the filing of the UCC financing statement was to secure both a present and an antecedent debt and that there was no element of bad faith in doing any of this.

The trust's argument, however, fails to grasp that, under R.C. 1336.05(B), fraud is imputed to the parties whenever the statutory elements are met. As noted, those elements are satisfied when (1) the creditor's claim arose before the transfer, (2) the transfer was made to an insider for an antecedent debt, (3) the debtor was insolvent at the time of the transfer, and (4) the insider had reasonable cause to believe that the debtor was insolvent. Under those circumstances, the conveyance may be set aside as constructively fraudulent regardless of the motives of the principal actors. The transfer itself is deemed fraudulent.

## III

In his cross-appeal, Calim challenges the trial court's decision to amend, without a hearing, its original judgment entry granting him a monetary judgment against the trust to one granting him only a first-priority lien on PSI's assets against the trust. Calim argues that because a monetary judgment against the trust was the relief prayed for in his counterclaim, and because it is relief specifically authorized by the Ohio Fraudulent Transfer Act under R.C. 1336.08(B)(1), the trial court was without authority to *sua sponte* amend its previous judgment entry.

Although both parties have briefed this issue in the context of the court's inherent authority to alter its original judgment, we find the issue controlled more readily by recourse to the Rules of Civil Procedure. The original entry dated May 21, 1997, granting Calim a monetary judgment, failed to include certification under Civ.R. 54(B) that there was no just reason for delay. The absence of that language is dispositive because the May 21, 1997 entry also continues Calim's motion for a hearing on his claims for punitive damages and attorney fees. According to Civ.R. 54(B), in the absence of a determination that there is no just reason for delay, any order that adjudicates fewer than "all the claim or the rights and liabilities of fewer than all the parties" is "subject to revision at any time."

Finally, we note that a first-priority lien was part of the relief prayed for in Calim's counterclaim, and therefore the trial court clearly did not grant a form of relief that was not asked for.

Accordingly, the assignments of error in both the appeal and the cross-appeal are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

MARIANNA BROWN BETTMAN and PAINTER, JJ., concur.