T.C. Memo. 2010-172

UNITED STATES TAX COURT

AMY RUTH JEFFRIES, TRANSFEREE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16504-07.                    Filed August 4, 2010.

Amy Ruth Jeffries, pro se.

<u>Richard J. Hassebrock</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WELLS, <u>Judge</u>:  Respondent determined that petitioner was
liable, as a transferee of the Amy Ruth Jeffries Trust in
Bankruptcy, Marc Preston Gertz, Trustee (bankruptcy estate), for
its 2001 tax year for an assessed income tax liability of
$118,310, an addition to tax pursuant to section 6651(a)(1) of
$26,620, an addition to tax pursuant to section 6651(a)(2) of

$29,578, and an addition to tax pursuant to section 6654 of $4,682.[1]  We must decide whether petitioner is liable as a transferee of the bankruptcy estate for the bankruptcy estate's tax liability and additions to tax pursuant to section 6901.

FINDINGS OF FACT

Some of the facts and certain exhibits have been stipulated. The parties' stipulations of fact are incorporated in this opinion by reference and are found accordingly.

At the time she filed her petition, petitioner resided in Ohio.

Petitioner began working at Wal-Mart's Fairlawn, Ohio, store as a courtesy desk clerk and customer service manager on November 5, 1992, and was promoted to "lead" customer service manager on June 8, 1993.  Petitioner expressed an interest in being promoted and was permitted to work alongside the storewide personnel manager.  The personnel manager resigned from Wal-Mart in March 1997, and petitioner and another employee applied to fill the position permanently.  Petitioner scheduled a meeting with the Ohio Civil Rights Commission (OCRC) because she feared being passed over for a promotion on the basis of racial discrimination.  Another employee was promoted to the position of

---

[1]Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code, as amended, for the year in issue.  Amounts are rounded to the nearest dollar.

storewide personnel manager. On April 14, 1997, petitioner filed charges against Wal-Mart with the OCRC, alleging a discriminatory failure to promote her.

On May 21, 1998, petitioner's discrimination charges proceeded to litigation in the U.S. District Court for the Northern District of Ohio (District Court), where she also alleged retaliation under title VII of the Civil Rights Act of 1964, as amended, Pub. L. 88-352, tit. VII, 78 Stat. 253, codified at 42 U.S.C. secs. 2000e-2000e-17 (2006), and Ohio law (Wal-Mart suit). The jury found in petitioner's favor on her retaliation claim and awarded her $8,500 in compensatory damages, $425,000 in punitive damages, and $119,073 in accrued interest, and the district court entered judgment in accordance with the verdict. Wal-Mart appealed the judgment to the U.S. Court of Appeals for the Sixth Circuit.

On July 26, 1999, with the appeal of the judgment in the Wal-Mart suit still pending, petitioner filed a petition for protection under chapter 7 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Northern District of Ohio (bankruptcy court). Petitioner did not list respondent as a creditor. As a result of the filing, the bankruptcy estate was created and Marc Preston Gertz (Mr. Gertz) was named trustee. Upon creation of the bankruptcy estate, the potential proceeds of the Wal-Mart suit (proceeds) became property of the bankruptcy estate.

On July 21, 2001, the U.S. Court of Appeals for the Sixth Circuit affirmed the District Court judgment. On October 10, 2001, Wal-Mart satisfied the judgment and issued a $552,573 check for the proceeds to the bankruptcy estate. The proceeds were deposited into the bankruptcy estate's bank account. The bankruptcy estate earned interest of $3,217 on the deposited funds during the 2001 tax year.

On June 18, 2002, petitioner received a distribution of $200,000 from the bankruptcy estate after indicating to Mr. Gertz that she and her husband "desperately needed funds". Following the distribution the bankruptcy estate had $133,014 in funds remaining and still owed trustee's fees of $18,533 and expenses of $96 to Mr. Gertz and $60,741 to creditors named in the bankruptcy petition. On October 3, 2003, petitioner received a final disbursement of $53,935 from the bankruptcy estate, representing all remaining assets following payments to all listed creditors. On June 23, 2004, Mr. Gertz filed a final report with the bankruptcy court. The bankruptcy estate did not file a Federal income tax return or pay Federal income tax for its 2001 tax year. On July 10, 2004, Mr. Gertz filed a final account with the bankruptcy court and indicated that the bankruptcy estate's bank account had a zero balance. On September 24, 2004, the bankruptcy court issued a final decree and closed petitioner's bankruptcy case.

On October 17, 2003, petitioner filed a Form 1040, U.S. Individual Income Tax Return, jointly with her husband for their 2002 tax year.[2]  Petitioner's 2002 return included $232,252 in distributions and $126,090 in interest income from the bankruptcy estate.  On December 7, 2004, petitioner filed a Form 1040X, Amended U.S. Individual Income Tax Return, jointly with her husband for their 2002 tax year.  On the amended return petitioner and her husband decreased their adjusted gross income by $311,675, claiming that the proceeds of the Wal-Mart suit were exempt from Federal income tax pursuant to Rev. Rul. 78-134, 1978-1 C.B. 197.[3]

The Internal Revenue Service (IRS) examined the bankruptcy estate's 2001 tax year, and, on December 16, 2005, respondent mailed a notice of deficiency to the bankruptcy estate for its 2001 tax year determining a deficiency in income tax of $116,824, an addition to tax pursuant to section 6651(a)(1) of $26,285, and an addition to tax pursuant to section 6654 of $4,669, as well as an addition to tax in an undetermined amount pursuant to section 6651(a)(2).  Mr. Gertz did not file a petition in this Court on behalf of the bankruptcy estate in response to the notice of deficiency.  On June 5, 2006, respondent assessed a tax liability

---

[2]Mr. Jeffries is not a party to these proceedings.

[3]The $311,675 included $185,585 in distributions from the bankruptcy estate and $126,090 in interest income from the bankruptcy estate.

against the bankruptcy estate of $118,310, as well as additions to tax totaling $29,578, and interest of $29,878.[4]

On January 23, 2007, petitioner submitted a "Letter of Protest" contesting respondent's transferee liability examination claiming that she is not a transferee because the surplus funds were not assets of the bankruptcy estate, the bankruptcy estate was solvent at the time of distribution, any distributions were made pursuant to the final order of the bankruptcy court, and that the Government has not exhausted all reasonable efforts to collect from the bankruptcy estate.

On February 22, 2007, petitioner filed a motion in the bankruptcy court to reopen her bankruptcy case, which the bankruptcy court granted on February 26, 2007.

---

[4]The Dec. 16, 2005, notice of deficiency sent to the bankruptcy estate determined a deficiency of $116,824. On June 5, 2006, respondent assessed a tax liability against the bankruptcy estate of $118,310. The $118,310 assessment is the same amount determined in the Apr. 26, 2007, notice of transferee liability sent to petitioner. The Dec. 16, 2005, notice of deficiency sent to the bankruptcy estate was based upon the allowance of a standard deduction of $3,800 in the calculation of taxable income, but the June 5, 2006, calculations omitted the standard deduction. The calculations of the additions to tax are based upon the amount determined in the notice of deficiency and contain a similar discrepancy. See secs. 6651(a)(1) and (2), 6654. In a bankruptcy proceeding where the debtor is an individual, if the bankruptcy estate does not itemize deductions, it is entitled to a standard deduction equivalent to that allowed for a married individual filing a separate return. Sec. 1398(c). For tax year 2001 the standard deduction for a married individual filing a separate return was $2,500. Sec. 63(c)(2)(D).

On April 26, 2007, respondent mailed petitioner a notice of transferee liability determining that petitioner was liable, as transferee of the bankruptcy estate for its 2001 tax year, for an income tax deficiency of $118,310, an addition to tax pursuant to section 6651(a)(1) of $26,620, an addition to tax pursuant to section 6651(a)(2) of $29,578, and an addition to tax pursuant to section 6654 of $4,682. On July 23, 2007, petitioner timely filed a petition for review of the notice of transferee liability with this Court.

On October 15, 2007, petitioner and Mr. Gertz filed a joint motion to have the bankruptcy court determine the tax liability of the bankruptcy estate for its 2001 tax year. In response, the United States filed a motion to dismiss the action. Among the contentions in its motion for dismissal, the United States contends that petitioner elected to proceed in the Tax Court for adjudication of petitioner's liability for the tax deficiency. On December 24, 2007, petitioner and Mr. Gertz filed an objection to the United States' motion to dismiss. Among the contentions in the joint objection, petitioner and Mr. Gertz contend that the bankruptcy case was reopened before the Tax Court case, that the Tax Court case has nothing to do with the administrative issues in the bankruptcy case, and that the bankruptcy court has exclusive jurisdiction to determine the tax liability of the bankruptcy estate. On March 6, 2008, petitioner and Mr. Gertz

withdrew their joint motion to determine the tax liability of the bankruptcy estate, which the bankruptcy court permitted. Mr. Gertz then filed on behalf of the bankruptcy estate a Form 1041, U.S. Income Tax Return for Estates and Trusts, reporting a total Federal income tax due of $160,731 for tax year 2001.

On April 4, 2008, the United States filed a motion in the bankruptcy court to vacate the order of distribution, to order disgorgement from petitioner and Mr. Gertz, and to order an accounting because the previous distributions to petitioner were erroneous and Mr. Gertz failed to file for and pay the bankruptcy estate's Federal income tax liability. Mr. Gertz filed a brief in partial opposition, claiming that the disgorgement of his trustee fee should represent the extent of his liability.

On September 4, 2008, this Court set the instant transferee liability case for trial in Columbus, Ohio, for the trial session beginning February 9, 2009, and on February 10, 2009, the instant case was tried.

We take judicial notice of several filings made and orders entered after trial. On December 21, 2009, an agreed order was entered by the bankruptcy court in which Mr. Gertz was ordered to disgorge his trustee fee of $18,533. On February 24, 2010, the bankruptcy court ordered that $3,012 of Mr. Gertz' trustee fee would be distributed to the State of Ohio and $15,521 would be distributed to respondent. The bankruptcy court also stated that

"This order is without prejudice as it regards the rights and remedies of the Internal Revenue Service to seek disgorgement from Debtor [petitioner], or to impose transferee liability on her under 26 U.S.C. § 6901."  On April 30, 2010, Mr. Gertz filed an amended chapter 7 "Trustee's Final Account and Distribution Report Certification" stating that the bankruptcy estate had been fully administered and an application for discharge.  On May 25, 2010, the United States filed a response.  In that response the United States stated that "there should be no presumption that the case has been fully administered because the United States has filed this objection within the 30-day period after the filing of the trustee final account."  However, the United States "does not necessarily object to the final report- i.e., it only objects if the Court would construe its approval to have preclusive force with respect to the United States' suit against [Mr. Gertz]."

On May 25, 2010, the United States also filed a suit in the U.S. District Court for the Northern District of Ohio against Mr. Gertz seeking to recover:

> damages equal to the full unpaid balance due upon its administrative claim, $281,300.56, plus interest from May 24, 2010 for [F]ederal income taxes, penalties and interest due from the Chapter 7 estate of [petitioner] for the year ended December 31, 2001.

See <u>United States v. Gertz</u>, No. 5:10-cv-1171 (N.D. Ohio May 25, 2010) (complaint).[5]

On July 9, 2010, the bankruptcy court entered an agreed order closing the bankruptcy case.  Additionally, the bankruptcy court stated that the order closing the case:  "in no way bars the United States' action for damages against [Mr. Gertz] * * * or any other action to collect the tax liabilities of the debtor from the debtor or other sources."

### OPINION

As a preliminary matter, we discuss whether we are barred by either the automatic stay of 11 U.S.C. sec. 362 (1994), or the permanent injunction of 11 U.S.C. sec. 524 (1994), from hearing the instant case.

Upon the filing of a bankruptcy petition an automatic stay arises to temporarily bar actions against or concerning the debtor or property of the debtor or the bankruptcy estate.  11 U.S.C. sec. 362(a); <u>Kovitch v. Commissioner</u>, 128 T.C. 108, 111 (2007).  The automatic stay operates as a stay against:  "the

---

[5]Respondent asserts that he is entitled to seek relief in both the District Court and the Tax Court.  While the bankruptcy court might have been able to provide more complete relief, we see no barrier to deciding the instant case as the parties have presented it to us.

commencement or continuation of a proceeding before the United States Tax Court concerning the debtor." 11 U.S.C. 362(a)(8).[6]

The Court has jurisdiction to determine whether the automatic stay prevents us from proceeding in the instant case. See Kovitch v. Commissioner, supra at 112. We have construed the phrase "concerning the debtor" to mean that the automatic stay should not apply unless the Tax Court proceeding possibly would affect the tax liability of the debtor in bankruptcy. Id.

The automatic stay continues until the earliest of the following occurrences: The case is closed, the case is dismissed, or a discharge is granted or denied. 11 U.S.C. sec. 362(c)(2). A discharge operates, among other things, as an injunction against: "the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor". 11 U.S.C. sec. 524(a)(2). However, a discharge applies only to those debts that arose before the date of the order for relief.

---

[6]At the time of the original bankruptcy filing, July 26, 1999, 11 U.S.C. sec. 362(a)(8) read: "(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor." The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, sec. 709, 119 Stat. 127, amended 11 U.S.C. sec. 362(a)(8), effective in cases commenced on or after Oct. 17, 2005. Id. sec. 1501, 119 Stat. 216. The amended version removed the phrase "the debtor" and replaced it with the phrase "a corporate debtor's tax liability for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title".

11 U.S.C. 727(b) (1994). The commencement of a voluntary bankruptcy case constitutes an order for relief. 11 U.S.C. sec. 301 (1994).

Petitioner's bankruptcy case was originally closed on September 24, 2004, as of which date the automatic stay terminated. See 11 U.S.C. secs. 362(c)(2), 524. Following the commencement of the bankruptcy case, the bankruptcy estate received $552,573 in satisfaction of the Wal-Mart suit during tax year 2001. The income tax liability associated with that income became due and owing at the close of the bankruptcy estate's 2001 tax year.[7] See Hagaman v. Commissioner, 100 T.C. 180, 185 (1993). The additions to tax would have accrued when the tax return went unfiled and the tax liability went unpaid. See secs. 6012(a)(9), 6072(a), 6151(a), 6651(a)(1) and (2), 6654. Accordingly, the permanent injunction of 11 U.S.C. section 524 does not bar respondent from seeking the tax liability or the additions to tax of the bankruptcy estate against petitioner as a transferee as those liabilities are debts that arose after July 26, 1999, the date petitioner filed her voluntary bankruptcy case. See 11 U.S.C. sec. 727(b).

---

[7]In its return filed with respondent the bankruptcy estate claims to be a calendar year taxpayer. The record contains no evidence that the bankruptcy estate elected a different tax year. Secs. 441(g), 1398(j)(1).

The bankruptcy case was reopened pursuant to 11 U.S.C. section 350(b) (1994) to establish the tax liability of the estate pursuant to 11 U.S.C. section 505 (1994). The reopening of a bankruptcy case does not automatically continue or reactivate the automatic stay. Mass. Dept. of Revenue v. Crocker, 362 Bankr. 49, 56 (B.A.P. 1st Cir. 2007); Allison v. Commissioner, 97 T.C. 544, 546 (1991). A bankruptcy court may reinstate a stay under its broad equitable powers under 11 U.S.C. section 105(a) (1994). Mass. Dept. of Revenue v. Crocker, supra at 56-57. However, the bankruptcy court has not done so in the instant case. Additionally, the reopened bankruptcy case has been closed. See 11 U.S.C. sec. 362(c)(2). Consequently, we hold that we are not barred from proceeding with the instant case.

Section 6901(a) provides that the liability, at law or in equity, of a transferee of property "shall * * * be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred". Section 6901 does not impose liability on the transferee, but merely gives the Commissioner a procedure or remedy to enforce the transferor's existing liability. See Commissioner v. Stern, 357 U.S. 39, 42 (1958) (discussing statutory predecessor of section 6901); see also Hagaman v. Commissioner, supra at 183. The burden of proof

- 14 -

is on the Commissioner to show that the taxpayer is liable, at law or in equity, as a transferee, but not to show that the transferor taxpayer was liable for the underlying tax.  Sec. 6902(a); Rule 142(d).

Depending on the provisions of the particular State law and the rules of equity that are involved in a case, factors generally relevant in considering transferee liability have been described as follows:

> (1) That the alleged transferee received property of the transferor; (2) that the transfer was made without adequate consideration or for less than adequate consideration; (3) that the transfer was made during or after the period for which the tax liability of the transferor accrued; (4) that the transferor was insolvent prior to or because of the transfer of property or that the transfer of property was one of a series of distributions of property that resulted in the insolvency of the transferor; (5) that all reasonable efforts to collect from the transferor were made and that further collection efforts would be futile; and (6) the value of the transferred property (which determines the limit of the transferee's liability).

Gumm v. Commissioner, 93 T.C. 475, 480 (1989) (citations omitted), affd. without published opinion 933 F.2d 1014 (9th Cir. 1991).  The foregoing list of factors is a generalization of equity principles under State law.  Hagaman v. Commissioner, supra at 184.  However, as section 6901 does not enumerate such factors, the existence and extent of liability must be determined under State law.  Id.

Typically, the principles relating to transferee liability in equity in a given State will be codified in the State's

fraudulent conveyance law. Id. Both petitioner and the bankruptcy estate trustee reside in the State of Ohio. See Ohio Rev. Code Ann. secs. 1336.01-1336.11 (LexisNexis 2006). Accordingly, we analyze whether petitioner may be held liable, pursuant to Ohio law, as a transferee of the bankruptcy estate for the bankruptcy estate's 2001 assessed income tax liability and related additions to tax.

Ohio has adopted the Uniform Fraudulent Transfer Act (UFTA), which provides as follows:

> A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Ohio Rev. Code Ann. sec. 1336.05(A). Ohio Revised Code section 1336.07(A) allows a creditor to collect the assets from the transferee if a transfer is fraudulent under Ohio Revised Code section 1336.05. Consequently, if the bankruptcy estate's transfer of funds to petitioner was fraudulent under Ohio Revised Code section 1336.05, respondent is entitled to collect the bankruptcy estate's deficiency and additions to tax from petitioner pursuant to section 6901.

The bankruptcy estate transferred to petitioner, for no consideration, an initial cash disbursement of $200,000 on June 18, 2002, and a final cash disbursement of $53,935 on October 3,

2003. As noted above, the bankruptcy estate's tax liability regarding the Wal-Mart suit was a preexisting debt that was due and owing to respondent at the close of the bankruptcy estate's 2001 tax year. See Hagaman v. Commissioner, 100 T.C. at 185.

The bankruptcy estate became insolvent as a result of the June 18, 2002, distribution to petitioner. A party is insolvent once its liabilities exceed its assets. Ohio Rev. Code Ann. sec. 1336.02(A)(1). In addition to the $60,741 owed to the outstanding named creditors and the $18,629 owed to Mr. Gertz as compensation for his role as trustee, the bankruptcy estate owed $118,310 in Federal income tax, for total liabilities of $197,680.[8] Following the June 18, 2002, distribution to petitioner, the bankruptcy estate's then-existing liabilities of $197,680 exceeded its then-existing assets of $133,014.

Petitioner argues that she has done nothing wrong. However, the intent of the parties is not controlling. See Ohio Rev. Code Ann. sec. 1336.05(A); Comer v. Calim, 716 N.E.2d 245, 250 (Ohio Ct. App. 1998) (fraudulent conveyance may be set aside regardless of the motives of the parties). As to petitioner's contention

---

[8]The bankruptcy estate would have been insolvent if either the tax liability of $116,824 from the Dec. 16, 2005, notice of deficiency or of $160,731 shown due on the 2001 Form 1041 filed by the bankruptcy estate had been used to calculate total liabilities.

This calculation excludes additions to tax which would have accrued when the tax return went unfiled and the tax liability went unpaid. See secs. 6651(a)(1) and (2), 6654.

that respondent has not exhausted all reasonable efforts to collect the tax liability from the bankruptcy estate, we note the proceedings in the District Court and the recently concluded proceedings in the bankruptcy court.  However, the Ohio UFTA does not require a creditor to prove that it exercised all reasonable efforts to collect the liability from the transferor before proceeding against the transferee.  See Ohio Rev. Code Ann. secs. 1336.01-1336.11.

Accordingly, we conclude that the distributions of cash from the bankruptcy estate to petitioner during June 2002 and October 2003 were fraudulent transfers under Ohio law.[9]

Generally, a taxpayer may challenge the underlying tax liability of the transferor.  Sec. 6901(a) (underlying tax liability shall be "assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred"); see also United States v. Williams, 514 U.S. 527, 539 (1995) ("certain transferees may litigate the tax liabilities of the transferor; if the transfer qualifies as a fraudulent conveyance under state law, the Code treats the transferee as the taxpayer"); L.V. Castle Inv. Group, Inc. v. Commissioner, 465

_____

[9]Because we conclude that the transfers were fraudulent under the Ohio UFTA, we need not address additional Ohio equitable principles or the factors described in Gumm v. Commissioner, 93 T.C. 475 (1989), affd. without published opinion 933 F.2d 1014 (9th Cir. 1991).

F.3d 1243, 1248 (11th Cir. 2006) ("transferee is 'free to litigate the[ ] transferor's liability' after it receives a notice of transferee liability") (quoting <u>Great Falls Bonding Agency, Inc. v. Commissioner</u>, 63 T.C. 304, 307 (1974)).  However, if the transferor's tax liability is subject to a closing agreement or if res judicata applies, the transferee may not litigate the transferor's underlying liability.  <u>Pert v. Commissioner</u>, 105 T.C. 370, 377 (1995); <u>Krueger v. Commissioner</u>, 48 T.C. 824, 830-832 (1967).  Petitioner has not contested the assessments against the bankruptcy estate, and she failed to make any such arguments.  Accordingly, we deem conceded any issue regarding the transferor's underlying liability.

The value of the funds transferred in the distributions to petitioner ($253,935) is greater than the amount respondent sought in the notice of transferee liability ($179,910).[10]

Accordingly, we hold that petitioner is liable as a transferee of the bankruptcy estate for its 2001 tax year pursuant to section 6901 for the bankruptcy estate's assessed income tax liability of $118,310, the addition to tax pursuant to section 6651(a)(1) of $26,620, the addition to tax pursuant to

---

[10]As the $179,910 liability does not include interest or account for the disgorged trustee's fees paid to respondent, $253,934 represents the upper limit of petitioner's liability. See <u>Gumm v. Commissioner</u>, <u>supra</u> at 480; <u>Stokes v. Commissioner</u>, 22 T.C. 415, 428 (1954).

section 6651(a)(2) of $29,578, and the addition to tax pursuant to section 6654 of $4,682.

The Court has considered all other arguments made by the parties, and to the extent we have not addressed them herein, we consider them moot, irrelevant, or without merit.

On the basis of the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.