**[Cite as *White v. Molnar Trust*, 2022-Ohio-1976.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

Russell White, et al.      Court of Appeals No. OT-21-022

     Appellants/cross-appellees      Trial Court No. 15CV236

v.

Gene F. & Mary E. Molnar Trust, et al.      **DECISION AND JUDGMENT**

     Appellees/cross-appellants      Decided: June 10, 2022

* * * * *

Kenneth R. Resar, for Appellees/cross-appellants

Jack Morrison, Jr. and Nathan P. Woodward, for Appellants/cross-appellees

* * * * *

**MAYLE, J.**

**{¶ 1}** Plaintiffs-appellants, Russell White, Betty Oprian, David Barsan, and Anita Barsan (appellants), appeal the July 27, 2021 judgment of the Ottawa County Court of Common Pleas, finding in favor of appellants on their replevin/conversion claim and awarding $0 in damages, and denying appellants' request for attorney fees. Defendants-appellees, the Gene F. Molnar Trust, the Mary E. Molnar Trust, and Gene and Mary Molnar, as trustees and individually (appellees), asserted a cross-appeal of the same

judgment, challenging the trial court's judgment in favor of appellants on the replevin/conversion claim, as well as the judgment dismissing appellees' claims for fraudulent transfer and civil conspiracy.

{¶ 2} For the following reasons, we find the trial court abused its discretion in dismissing appellees' fraudulent transfer claim. Because this claim is dispositive of the issues on appeal, we reverse the judgment of the trial court.

## I.      Background

{¶ 3} The issues in this appeal concern a marina business, with events spanning several years. We address only the facts pertinent to the issues addressed on appeal.

### A.      Appellants acquire and operate the marina business

{¶ 4} Appellees constructed the marina and operated the business as NE Port Marina from 1985 until 2008. In 2008, appellants formed NE Port Investments, LLC (NE Port) for the purpose of acquiring the marina property from appellees. Appellees conveyed the marina property to NE Port in exchange for $2 million. To secure funding for the purchase, NE Port obtained a loan in the amount of $1.2 million from First National Bank of Bellevue (the Bank), secured by a first mortgage to the Bank. Appellees financed the remaining $800,000 of the purchase price, secured by a promissory note and second mortgage, issued by NE Port to appellees. The parties recorded the notes and mortgages.

{¶ 5} Appellants all reside in Summit County, and they appointed William Brown as NE Port's manager. Brown managed with little oversight by appellants, and by the close of 2011, NE Port was facing default on its note with the Bank. The Bank agreed to

2.

a loan modification, extending the maturity date, but only if appellants each executed the loan modification agreement as co-debtors and provided personal guaranties. On January 3, 2012, appellants executed the loan modification and individual cognovit notes, but NE Port failed to make payment as required under the terms of the loan modification.

{¶ 6} On March 27, 2012, the Bank obtained a cognovit judgment against each appellant in Summit County, and subsequently executed on the judgments, garnishing appellants' personal bank accounts for a total of $391,741.04. The amount collected by the Bank did not satisfy the judgment, however, which then totaled over $1.1 million plus interest.

{¶ 7} In an attempt to resolve the debt owed on the Bank's judgment, as well as the amount remaining due on appellees' note, appellants negotiated a "buy-back" of the marina property with appellees. On May 17, 2012, the parties executed a purchase agreement. Appellees agreed to pay $1 million for the marina, with various credits against the purchase price. NE Port agreed to satisfy the remaining amount owed to the Bank to release the Bank's mortgage and to deliver the property free of all liens, and appellees agreed not to enforce their $800,000 note against NE Port. Based on these terms, however, appellants and NE Port would have needed additional funds to satisfy the Bank's judgment.

{¶ 8} The "buy-back" sale never closed, and on December 14, 2012, appellees sent a letter to NE Port and counsel for appellants, informing them of rescission, stating "you are hereby notified that the Molnars [appellees] have elected to rescind and void the

3.

Purchase Agreement." The letter also provided NE Port with notice of default on the $800,000 note, and included a demand for immediate payment.

### B. NE Port loses the marina in foreclosure proceedings

{¶ 9} On January 13, 2013, the Bank filed a foreclosure complaint in Ottawa County, naming NE Port and appellees as defendants, as well as other parties with an interest in the property. Appellees filed a cross-claim in foreclosure against NE Port, seeking judgment on their $800,000 note and second mortgage. Appellants received notice of the foreclosure proceedings.[1] At the Bank's request, the foreclosure court appointed a receiver for the marina and the receiver managed the business during the pendency of the foreclosure proceeding.

{¶ 10} NE Port failed to answer the complaint or cross-claim in foreclosure, and the Bank and appellees each obtained default judgment against NE Port. The property was appraised at $2 million and scheduled for a sheriff's sale on August 30, 2013.

{¶ 11} On August 9, 2013, appellants filed a motion to intervene in the foreclosure, which was denied as untimely. In affirming, we noted the notice provided to each appellant as well as the delay in seeking intervention. *First Natl. Bank of Bellevue v. NE Port Invests., LLC,* 6th Dist. Ottawa No. OT-13-024, 2014-Ohio-1760 (*Bellevue I*). We noted the delay in seeking to intervene until "72 days after final judgment had been entered and the date for the sheriff's sale had been scheduled." *Bellevue I* at ¶ 11.

---

[1] *See First Natl. Bank of Bellevue v. NE Port Invests., LLC,* 6th Dist. Ottawa No. OT-13-024, 2014-Ohio-1760, ¶ 12 ("The record further reflects that [the LLC members] own all of the membership units of NE Port, and that the summons and foreclosure complaint was served upon them in January 2013.").

4.

Furthermore, we remarked on the appellants' allegation "in their own motion to intervene that their potential claim arose on October 12, 2012," the date the Summit County Court of Common Pleas released the garnished funds to the Bank, totaling $391,741.04. *Id.* at ¶ 12. In concluding appellants' attempt to intervene in the foreclosure proceeding was untimely, we found:

> The record reflects that by the time the motion for intervention had been filed, any and all potential interests in the real property had been established by the court and the matter was set for sheriff's sale. It is unmistakable that prejudice would result to the enumerated mortgage and lienholders if the sale and judgment were vacated to enable the court to consider [appellants'] claims to establish and prioritize equitable liens.

*Id.* at ¶ 13.

{¶ 12} On August 30, 2013, appellees purchased the property at sheriff's sale for the minimum bid of $1,330,334.00. On November 22, 2013, the foreclosure court confirmed the sheriff's sale, and a month later, the Bank received funds sufficient to pay off the remaining amount due on its loan and filed a satisfaction of its judgment. In January, 2014, the receiver turned the property over to appellees.

### C. The appellees resume owning and operating the marina business

{¶ 13} After appellees took possession of the marina property, they operated the marina as NE Port Marina, Inc. They made use of the floating docks that remained on the property after investing in the refurbishing and repair of those docks. On May 20, 2014, appellees received disbursement from the sale proceeds as partial satisfaction of

5.

their judgment, with over $500,000 remaining due. Neither NE Port nor appellants contacted appellees regarding any personal property remaining at the marina.

{¶ 14} On March 27, 2015, appellants adopted an amended operating agreement for NE Port, removing Brown as manager, and executed an Agreement for Sale of Goods in Satisfaction of Debt, purporting to convey all goods and chattels of NE Port as "sole owner, free and clear of any liens or encumbrances," to appellants as satisfaction of "valid unsecured priority accommodation claims against [NE Port] in an amount in excess of $390,000.00, under which [appellants] are entitled to payment before all other creditors."

{¶ 15} In May 2015, after the Bank returned additional funds to the foreclosure court, appellants filed a renewed motion to intervene in the foreclosure suit to assert an "equitable claim" against those proceeds. *See First Natl. Bank of Bellevue v. NE Port Invests., LLC,* 6th Dist. Ottawa No. OT-14-027, 2015-Ohio-558 (*Bellevue II*) (reversing the award of attorney fees and expenses to the Bank in the amount of $48,650.66). The foreclosure court denied appellant's request for intervention and disbursed additional funds to appellees. These additional funds were insufficient to fully satisfy appellees' judgment, and NE Port made no attempt to satisfy that judgment.

### D. Appellants file their replevin suit;
### Appellees assert counterclaims and third party claims

{¶ 16} On July 30, 2015, appellants filed suit seeking statutory replevin, accompanied by a motion for immediate possession of the "goods and chattel" of the marina. Appellants claimed ownership of a list of property pursuant to the March 27,

6.

2015 Agreement for Sale of Goods in Satisfaction of Debt, executed "for release of [appellants' $391,741.04] priority accommodation claim against NE Port." This suit and motion marked the first notice to appellees that the appellants claimed ownership of any personal property of the marina, including the floating docks. Appellees, moreover, believed they purchased the docks as part of the sheriff's sale. After an August 2015 hearing on the motion for possession, appellants waived their motion for possession and requested to proceed on the merits of the replevin claim.

{¶ 17} Appellees filed an answer to the complaint, as well as a counterclaim against the appellants and a third party claim against NE Port, seeking damages for breach of the buy-back agreement, civil conspiracy, and unjust enrichment, and seeking to set aside the purported sale of goods and chattel from NE Port to appellants as a fraudulent transfer under R.C. 1336.05.

{¶ 18} On October 29, 2015, appellants filed their answer to the counterclaim, denying the allegations. On December 22, 2015, NE Port filed its answer to the third party complaint, admitting that appellants "collectively own 100% of the ownership units of NE Port" and otherwise denying the allegations of wrongdoing.

{¶ 19} The matter proceeded to trial before a magistrate on August 29 through 31, 2016.

{¶ 20} The parties stipulated that the replevin claim was limited to the floating docks, with damages sought for conversion of the floating, removable portions of the docks. The parties further stipulated to numerous exhibits, including LLC documents, the 2012 "buy-back" agreement, the 2015 Agreement for Sale of Goods in Satisfaction of

7.

Debt, and select court filings in the foreclosure and Summit County cases which included appellees' 2013 foreclosure judgment against NE Port.

{¶ 21} On January 25, 2017, the magistrate issued a decision, and as part of the findings of fact, determined the conveyance of property under the March 27, 2015 Agreement for Sale of Goods in Satisfaction of Debt was a fraudulent conveyance. In addressing the value of the docks, the magistrate determined there was "no current retail market for the sale or rental" of those docks, and found appellants' expert testimony as to value lacked a proper, factual foundation to be considered as evidence. The magistrate also found appellants in breach of the "buy-back" agreement, and ordered contract damages in the amount of $596,746.84, representing the amount paid at sheriff's sale less the contract purchase price. The magistrate made no findings or conclusions regarding appellees' civil conspiracy claim.

{¶ 22} Appellants and appellees filed their respective objections to the magistrate's decision. Pertinent to the present appeal, appellants challenged the magistrate's findings regarding fraudulent transfer, arguing their claim against NE Port was a priority claim under R.C. 1303.59(E), and their claim arose prior to appellees' judgment. Appellees responded, arguing that appellants "were not the lawful owners of the floating docks, because any ownership interest they had obtained was the result of a fraudulent and voidable transfer of the assets to them from NE Port[.]"

{¶ 23} On July 27, 2021, the trial court entered judgment, sustaining appellants' objections, entering judgment for appellants on their replevin/conversion claim, and dismissing appellees' claims for fraudulent transfer, civil conspiracy, and breach of

8.

contract. In determining damages in conversion, however, the trial court determined appellants' expert testified using the "income approach," and therefore "presented no evidence as to the fair market value of the docks." The trial court awarded appellants $0 in damages and declined to award attorney fees.

### E.     The Appeals

{¶ 24} Appellants filed a timely appeal of the judgment, assigning the following errors for our review:

1. The trial court erred as a matter of law when it held that the income approach is not evidence of the fair market value of personal property.

2. The trial court erred as a matter of law when it awarded the Whites and Barsans [appellants] zero dollars of damages for the Molnars' [appellees] conversion and failed to award costs.

3. The trial court abused its discretion when it denied the Whites and Barsans' [appellants] request for reasonable attorney fees.

{¶ 25} Appellees asserted a cross-appeal. They assign the following errors for our review:

1. The trial court erred as a matter of law when it held that the portions of the floating docks located at the NE Port Marina consisting of the ramps and floating tanks were not fixtures that had become a part of the real property that was transferred to the Molnars [appellees] upon their purchase of the NE Port Marina real property at the Sheriff's sale.

9.

2. The trial court erred as a matter of law when it held that the [sic.] Gene Molnar and Mary Molnar [appellees] had converted the floating docks from the Plaintiffs, Russell White, Betty Oprian, David Barsan and Anita Barsan [appellants] because the Plaintiffs failed to establish that they were lawfully entitled to possession of the floating docks at the time the Replevin and Conversion Action was filed with the Ottawa Common Pleas Court on July 30, 2015.

3. The trial court erred as a matter of law when it denied and dismissed the claim of Gene Molnar and Mary Molnar [appellees] that the March 27, 2015 transfer of all the personal property of NE Port Investments, LLC, to the [sic.] Russell White, Betty Oprian, David Barsan and Anita Barsan [appellants] was not a fraudulent transfer in accordance with the provisions of Chapter 1336 of the Ohio Revised Code.

4. The trial court erred as a matter of law when it denied and dismissed the claim of Gene Molnar and Mary Molnar [appellees] that NE Port Investments, LLC, and the Plaintiffs, Russell White, Betty Oprian, David Barsan and Anita Barsan [appellants], intentionally engage in a malicious combination of two or more persons to injure the Molnars in their person or property in a way that was not competent for one person acting alone, resulting in actual damages to the Molnars.

## II. Analysis

{¶ 26} Ownership of the docks is a threshold issue in this case. Appellants sought damages for conversion, and therefore "ownership or right to possession" was an essential element of their claim. *Hutchings v. Hutchings,* 2019-Ohio-5362*,* 150 N.E.3d 548, ¶ 23 (6th Dist.), citing *Peirce v. Szymanski,* 6th Dist. Lucas No. L-11-1298, 2013-Ohio-205, ¶ 19. Appellees challenge appellants' claim of ownership within their first and third assignments of error in the cross-appeal. As such, we must first address the cross-appeal and resolve these ownership issue before reaching appellants' claimed error regarding the value of the property, determined as damages within their replevin/conversion claim.

### A. Standard of Review

{¶ 27} Appellees challenge the trial court's judgment, resolving the objections to the magistrate's decision, as those objections pertained to ownership of the floating docks. A trial court must conduct an independent, de novo review of the magistrate's findings and conclusions, in accordance with Civ.R. 53. We review the trial court's decision, overruling or sustaining objections to the magistrate's decision, for an abuse of discretion. *Tidewater Financial Co. v. Smith,* 6th Dist. Lucas No. L-19-1181, 2020-Ohio-5042, ¶ 6, citing *Perrucci v. Whittington*, 2018-Ohio-2968, 118 N.E.3d 311, ¶ 110 (2d Dist.); *Thompson Thrift Constr. v. Lynn*, 2017-Ohio-530, 85 N.E.3d 249, ¶ 56 (5th Dist.).

{¶ 28} To demonstrate an abuse of discretion, appellee must show that the trial court's decision reflects an "unreasonable, arbitrary, or unconscionable" attitude. *Hine v.*

11.

*Hine,* 6th Dist. Wood No. WD-18-023, 2019-Ohio-734, ¶ 9, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

### B. Floating Docks as "Fixtures"

{¶ 29} In their first assignment of error, appellees argue the trial court erred in rejecting their claim that the floating docks were fixtures and transferred to appellees as part of the sheriff's sale of the marina property. While it is undisputed that the floating portions of the docks are removed at the end of every season, whether the property is physically attached to the land "has come to be regarded as less determinative of fixture status than was formerly the case at common law." *Masheter v. Boehm,* 37 Ohio St.2d 68, 73, 307 N.E.2d 533 (1974). Instead, the applicable test places greater emphasis on the "intention of the party responsible for emplacing the item, and the use or purpose to which it is put." *Id.* In addressing the issue, we must consider "the nature of the property; the manner in which it is annexed to the realty; the purpose for which the annexation is made; the intention of the annexing party to make the property a part of the realty; the degree of difficulty and extent of any loss involved in removing the property from the realty; and the damage to the severed property which such removal would cause." *Masheter* at paragraph two of the syllabus.

{¶ 30} Here, the testimony demonstrated that the marina business uses the floating docks as part of its only revenue producing activity, slip rental, but each floating dock section is designed for removal at the end of the boating season, and future plans include replacing the 30-year-old floating docks with modern, low-maintenance designs. And while appellees argued that they believed they had purchased the floating docks as part of

12.

the real property at sheriff's sale, they proffered no evidence, such as the sheriff's appraisal, demonstrating the docks were part of the property for sale. *See, e.g., Perez Bar & Grill,* 9th Dist. Lorain No. 11CA010076, 2012-Ohio-5820 at ¶ 14 (without evidence the personal property was included in the appraisal, buyer "could not reasonably argue that the price" paid included the personal property).

{¶ 31} The evidence at trial largely consisted of testimony regarding the market value for the floating docks, with that testimony clearly demonstrating the docks' limited, future usefulness as part of the marina business. Furthermore, testimony assigning no market value to the docks mainly relied on the age and condition of the docks. The record further demonstrated that potential resale or rental of the docks to another marina was not possible, not because the docks were not easily severed from the real property, but because no other marina could use docks with such an outdated design. Accordingly, considering the record, we find the trial court did not abuse its discretion in finding the floating docks were not "fixtures," but rather personal property not included in the sale of the real property. Appellees' first assignment of error on cross-appeal, therefore, is not well-taken.

### C.     Fraudulent transfer

{¶ 32} In their second and third assignments of error on cross-appeal, appellees challenge the judgment for conversion in favor of appellants and argue the appellants' purported transfer of ownership from NE Port to themselves constituted a fraudulent transfer pursuant to R.C. 1336.05(B). For ease of discussion, we address the error regarding fraudulent transfer first.

13.

**{¶ 33}** As provided by R.C. 1336.05(B):

A transfer made or an obligation incurred by a debtor is fraudulent as to a

creditor whose claim arose before the transfer was made or the obligation

was incurred if the transfer was made to or the obligation was incurred with

respect to an insider for an antecedent debt, the debtor was insolvent at that

time, and the insider had reasonable cause to believe that the debtor was

insolvent.

Where the statutory elements are demonstrated, "fraud is imputed to the parties[.]"

*Comer v. Calim,* 128 Ohio App.3d 599, 606, 716 N.E.2d 245 (1st Dist.1998),

citing R.C. 1336.05(B). "Under those circumstances, the conveyance may be set

aside as constructively fraudulent regardless of the motives of the principal actors.

The transfer itself is deemed fraudulent." *Id.*

**{¶ 34}** In support of their claim, appellees presented evidence including

testimony of Russell White, Betty Oprian, and David Barsan, and documentation

demonstrating the sequence of NE Port's borrowing and default, appellees'

judgment, and NE Port's attempted sale of all remaining assets to appellants, its

sole owners/members. In response, appellants presented no evidence, refuting

these facts. Thus, the unrefuted evidence at trial demonstrated a note executed by

NE Port in 2008 and reduced to judgment in favor of the appellees and against NE

Port in 2013. The record further demonstrated NE Port's purported transfer of all

of its remaining assets to appellants, sole members and owners of NE Port, in

14.

2015, after the debt to appellees arose.  At the time of this transfer, NE Port no longer owned the marina property and had no income.

{¶ 35} By definition, the LLC members are "insiders" of NE Port, as that term is defined at R.C. 1336.01(G).  Furthermore, NE Port was insolvent, and the LLC members had reasonable cause to believe this was so, as NE Port's debt far exceeded the value of its assets and NE Port was no longer paying its debts as they became due.  R.C. 1336.02(A).  Rather than dispute this evidence of insider status and insolvency, appellants argued that appellees' claim was subordinated to their own, priority interest in NE Port assets.  Appellants' priority argument lacks support in the record.

{¶ 36} Appellants argue a "priority interest" as accommodation makers, but cite to no finding in the record that they were, in fact, accommodation parties entitled to priority.  While appellants alleged in their pleading that they were accommodation members, "[o]ne asserting accommodation status has the burden of proving it."  (Citation omitted) *Fed. Land Bank of Louisville v. Taggart*, 31 Ohio St.3d 8, 11–12, 508 N.E.2d 152 (1987).  Furthermore, "'[w]hether an individual is an accommodation party presents a question of fact; the trial court should focus on the intention of the parties as reflected by the language of the pertinent instrument and by the surrounding circumstances.'" *Huron Cty. Banking Co. v. Knallay,* 22 Ohio App.3d 110, 114, 489 N.E.2d 1049 (6th Dist.1984), quoting *Campo v. Maloney*, 442 A.2d 997 (N.H.1982) (additional citation omitted.).

{¶ 37} The record contains no finding regarding the issue of "accommodation."  Even presuming appellants were accommodation parties, however, R.C. 1303.59(F) merely provides for "reimbursement" after the accommodating party pays the instrument.

15.

The statute makes no mention of priority or subrogation. Moreover, appellants' partial payment toward the judgment did not extinguish the debt NE Port owed to the Bank. Until the Bank received satisfaction of the debt owed on the note, appellants could not step in to the shoes of the Bank to exercise the Bank's priority on the obligation. "[A]lthough a guarantor may have a cause of action in reimbursement or restitution, where a guarantor totally satisfies an underlying obligation, such as paying off a promissory note entirely, general principles of guaranty law establish a guarantor's right to step into the shoes of a payee to enforce the note against the principal debtor." *Greenzalis v. Nationwide Mut. Ins. Co.*, 10th Dist. Franklin No. 16AP-139, 2016-Ohio-8344, ¶ 35.

{¶ 38} Appellants, however, argue their partial payment of the Bank's note granted them the right to subrogation, notwithstanding the remaining balance owed to the Bank. As to a right of subrogation arising from only partial payment, "courts have universally held that subrogation may not be enforced until the debt is paid in full and thereby the third party has no further interest in the security bound for the debt." *Harshman v. Harshman,* 42 N.E.2d 447, 450 (2d.Dist.1941). With only partial payment on the debt, appellants did not "step into the shoes" of the Bank. Furthermore, similar attempts to assert a priority interest in proceeds of the sale, after the Bank had received full payment, were denied as untimely in the foreclosure suit. Thus, at best, appellants have a right to seek reimbursement from NE Port, without the equitable remedy of subrogation to assert the Bank's priority interest under the note.

16.

{¶ 39} Instead of seeking reimbursement, appellants purported to transfer all remaining assets from NE Port to themselves. In challenging this transfer as fraudulent, appellees presented evidence demonstrating each statutory element under R.C. 1336.05, imputing fraud to the appellants. *Comer,* 128 Ohio App.3d at 606, 716 N.E.2d 245, citing R.C. 1336.05(B). In response, appellants presented no evidence, and on appeal point to nothing in the record, refuting fraud under the statute. Accordingly, the trial court's decision, sustaining appellants' objection to the finding of fraudulent transfer and dismissing appellees' claim, was unreasonable and arbitrary.

{¶ 40} In their second assignment of error, appellees challenge the trial court's entry of judgment in favor of appellants' on their replevin/conversion claim. In support, appellees raise two issues: (1) a lack of demand for return of the property, lawfully obtained and (2) a failure to demonstrate a lawful right to possession of the property, based on the fraudulent transfer. As we determined the trial court erred in dismissing the claim for fraudulent transfer based on undisputed evidence to support the claim, we need not address appellees' argument regarding demand, and agree with appellees that appellants failed to demonstrate a lawful right to possession. Based on this conclusion, we find appellees' second assignment of error has merit.

{¶ 41} We therefore find appellees' second and third assignment of errors in the cross-appeal well-taken. The conveyance from NE Port to appellants, accordingly, must be set aside, with ownership of the property restored to NE Port.

17.

#### D. Remaining assignments of error

{¶ 42} Our resolution of appellees' first, second, and third assignments of error are dispositive of each of appellants' assignments of error, raised on appeal. Appellants' sole challenge on appeal, within their three assignments of error, address the damages and attorney fee awards for their replevin/conversion claim. Because we determined the conveyance to appellants must be set aside, appellants lacked the requisite ownership interest in the property to maintain their replevin/conversion claim. Therefore, appellants' first, second, and third assignments of error on appeal are deemed moot.

{¶ 43} Finally, appellees challenge the trial court's finding regarding their civil conspiracy claim within their fourth assignment of error. After a careful review of the record, it appears the only reference to a civil conspiracy within the trial record and judgment entries occurred within the trial court's final judgment, dismissing the claim. Furthermore, while appellees argue intentional, malicious conduct by the appellants and NE Port, they cite to no evidence within the record to support this argument and no evidence to demonstrate any damages as a result of a civil conspiracy.

{¶ 44} Civil conspiracy is "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Avery v. Rossford, Ohio Transp. Improvement Dist.,* 145 Ohio App.3d 155, 165, 762 N.E.2d 388 (6th Dist.), citing *Kenty v. Transamerica Premium Ins. Co.,* 72 Ohio St.3d 415, 419, 650 N.E.2d 863 (1995). In this case, while appellees demonstrated an underlying tort, fraudulent transfer, they cite to no evidence of actual damages to support the claim. Therefore, as to the trial court's summary dismissal of this claim, we

18.

find no abuse of discretion, and appellees' fourth assignment of error is found not well-taken.

### III.    Conclusion

{¶ 45} As to appellants' first, second, and third assignments of error, we conclude that, the appellants did not have any ownership interest in the floating docks because the purported transfer from NE Port to appellants was fraudulent under R.C. 1336.05(B), and NE Port continues to own the property. Accordingly, we find appellants' first, second, and third assignments of error in the appeal regarding damages for their replevin/conversion claim moot, as the judgment must be vacated as a result of our disposition of the cross-appeal.

{¶ 46} As to appellees' first assignment of error, we conclude the trial court did not abuse its discretion in determining the floating docks were not fixtures. Therefore, appellees' first assignment of error in the cross-appeal is not well-taken.

{¶ 47} As to appellees' second and third assignments of error, challenging appellants' ownership interest as an element for conversion and claiming fraudulent transfer, we find appellees' second assignment of error in the cross-appeal well-taken as to the challenged ownership interest in the property. Additionally, because we conclude the trial court abused its discretion in overruling the findings of fraudulent transfer and dismissing appellees' claim for relief under R.C. Chapter 1336, we find appellees' third assignment of error in the cross-appeal well-taken.

19.

{¶ 48} As to appellees' fourth and final assignment of error in the cross-appeal, we find the trial court did not abuse its discretion in dismissing the claim for civil conspiracy. Appellees' fourth assignment of error, therefore, is not well-taken.

{¶ 49} Given our conclusions respecting the appellees' second and third assignments of error in the cross-appeal, we reverse the July 27, 2021 judgment of the Ottawa County Court of Common Pleas granting judgment in favor of appellants on the replevin/conversion claim. We further reverse the same judgment finding in favor of appellants, and against appellees, on the counterclaim for fraudulent transfer.

{¶ 50} The judgment on the replevin/conversion claim in favor of appellants is hereby vacated, and appellants' assigned errors respecting damages for replevin/conversion are deemed moot. Finding substantial justice has not been done, we enter judgment in favor of appellees on their counterclaim and third-party claim for fraudulent transfer, and order ownership of the floating docks restored to NE Port.

{¶ 51} The costs of this appeal are assessed to appellants pursuant to App.R. 24. It is so ordered.

Judgment reversed.

Russell White, et al. v. Gene F. &
Mary E. Molnar Trust, et al.
C.A. No. OT-21-022

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.


Christine E. Mayle, J.               _____
                                            JUDGE

Gene A. Zmuda, J.

                                       _____
Myron C. Duhart, P.J.                                   JUDGE
CONCUR.

                                       _____
                                            JUDGE


This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.